No.   91-492

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

JAMES D. KING,

      Plaintiff and Appellant,

-v-

SPECIAL RESOURCE MANAGEMENT, INC.,
ENTECH, INC., and THE MONTANA
POWER COMPANY,

      Defendants and Respondents.

APPEAL FROM:   District Court of the Second Judicial District,
In and for the County of Butte/Silver Bow,
The Honorable Ted L. Mizner, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Stephen C. Pohl, Bozeman, Montana (argued); Charles
P. Bowen, Bozeman, Montana

      For Respondent:

          Patrick T. Fleming (argued), Robert T. O'Leary,
Montana Power Company, Butte, Montana

**FILED**

FEB 11 1993

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA



Submitted: September 4, 1992

Decided:

_____
Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Plaintiff, James D. King, brought an action for wrongful discharge from employment based on the implied covenant of good faith and fair dealing against defendants Special Resource Management, Inc., Entech, Inc., and Montana Power Company in the Second Judicial District Court, Silver Bow County, Montana. The case was tried before a jury. After the close of the evidence, the District Court dismissed the action against defendants Entech, Inc. and Montana Power Company. The jury found in favor of defendant Special Resource Management, Inc. Plaintiff appeals. We reverse the jury verdict in favor of Special Resource Management, Inc. and affirm the judgments in favor of Montana Power Company and Entech, Inc.

The issues are restated as follows:

1. Did the District Court commit reversible error by granting eight peremptory challenges to the defendants Montana Power Company and its two subsidiary corporations based on a diversity of interests between defendants?

2. Did the District Court commit reversible error by granting defendants' motion in limine prohibiting some expert testimony, and by refusing to allow plaintiff's personnel expert to present opinion testimony without further foundation?

3. Is King entitled to a new trial against Entech, Inc. and Montana Power Company?

James D. King (King) initially began working for Montana Power Company (MPC) in June of 1980 as a Cost and Schedule Engineer for

1

the Colstrip 3 and 4 projects, and later became a Cost and Schedule Supervisor. Prior to his employment with MPC, Mr. King worked as a Construction Accountant on a large power plant construction project in Michigan, a position which required him to perform project-related accounting functions. When the Colstrip project neared completion, Mr. King transferred to Special Resource Management, Inc. (SRM) as a Supervisor of Accounting and Administration. He worked in that capacity from March 31, 1986, until his termination effective July 17, 1987, as part of a reduction in force at SRM. Mr. King's claim relating to that termination arose prior to the enactment of the Wrongful Discharge From Employment Act and, therefore, proceeded as a claim for breach of the implied covenant of good faith and fair dealing.

SRM is a wholly-owned subsidiary of Entech, Inc., which is a wholly-owned subsidiary of the Montana Power Company (MPC). Over Mr. King's objection, the District Court granted eight peremptory challenges to these three defendants, based on a diversity of interests between SRM and the other two defendants, MPC and Entech.

During the trial, the District Court directed verdicts for MPC and Entech. The jury found that defendant SRM did not breach the implied covenant of good faith and fair dealing. Mr. King moved for a new trial after the court entered judgment in favor of all defendants. The District Court denied this motion. King appeals the judgment entered by the District Court against all three defendants. Of the three defendants, only SRM filed a respondent's brief. After King noted this in his reply brief, MPC and Entech

2

filed a supplemental brief claiming that King had no legal basis for asserting a right to a new trial against them.

## I.

Did the District Court commit reversible error by granting eight peremptory challenges to the defendants Montana Power Company and its two subsidiary corporations based on a diversity of interests?

Mr. King contends that the three co-defendants should not have been allowed more than four peremptory challenges unless they could demonstrate "hostility" between themselves. He argues that the interests of MPC and Entech were not hostile to those of SRM and that the District Court incorrectly based the decision to grant additional peremptory challenges on a determination of "diversity" rather than "hostility." King further contends that this constitutes reversible error and, therefore, a new trial must be granted. The defendants contend that there was indeed hostility between them and that the District Court correctly allowed them eight peremptory challenges. Alternatively, SRM argues that even if the defendants were not hostile, Montana law requires King to demonstrate prejudice in order to procure a new trial and King cannot show that he was prejudiced. We will first address the question of prejudice.

The side with the greater number of peremptory challenges clearly has a tactical advantage created by its ability to eliminate potentially unfavorable jurors without cause. Section 25-7-224(1), MCA, provides that "[e]ach party is entitled to four

3

peremptory challenges . . . ." The words "each party" have been interpreted to mean "each side," unless the co-defendants are hostile to one another. Leary v. Kelly Pipe Co. (1976), 169 Mont. 511, 515, 549 P.2d 813, 816. In Leary, this Court stated that a party who claims that he was prejudiced by a grant of extra peremptory challenges to his opponents who in fact are not hostile must also show that he was prejudiced by that action. Leary, 549 P.2d at 816. This Court adopted a three-part test for prejudice in such circumstances: (1) the party must have exhausted his peremptory challenges, (2) he must have suffered material injury from that action by the court, and (3) as a result of that action, one or more objectionable jurors sat on the case. Leary, 549 P.2d at 816.

Later, in Hunsaker v. Bozeman Deaconess Found. (1978), 179 Mont. 305, 588 P.2d 493, we discussed the difficulty of proving prejudice when our attention is focused on juror conduct. Because difficulties encountered during appellate review had become magnified by the usual procedures used by most trial courts at the time we decided Hunsaker, we offered therein our suggestions for procedural changes which would enable the trial courts to make informed decisions based on thorough briefings by the parties, thereby making it possible to review the accuracy of the ruling at the time it was made. We stated:

> The District Courts should seriously consider the use of the pretrial conference as the best procedure to be used in resolving questions such as the number of peremptory challenges to be allowed each side. If for some rare reason the District Court holds no pretrial conference, the question of peremptory challenges should

4

> be raised by appropriate written motion filed before the commencement of jury selection, and it should set forth all facts and references tending to support his claim of hostility. In any case, the opposing party or parties should be given adequate time to respond to the claims of hostility.
>
> The trial court should, as a bare minimum, rule on the peremptory challenge issue before the questioning of jurors begins. To afford a basis for review, it should expressly set forth in the record the reasons for its ruling and the facts on which it relies in making its decision.

Hunsaker, 588 P.2d at 501.

This procedure eliminates the need for us to review the entire record using a hindsight approach to determine whether the parties were in fact "hostile" during the course of the trial. Thus, our review excludes materials beyond the point at which the ruling was made, including proof of actual prejudice, and we examine only the information available to the district court prior to its ruling.

Although we encouraged district courts to use these procedures in Hunsaker, the record therein did not include sufficient information to allow this Court to review the basis and rationale for the district court's ruling; therefore, we decided that case using the Leary three-prong test. Hunsaker, 588 P.2d at 500. This Court's decisions after Hunsaker have applied the Leary test for prejudice only where the record was insufficient for review. See, e.g., Gee v. Egbert (1984), 209 Mont. 1, 679 P.2d 1194; and Adams v. Cheney (1983), 203 Mont. 187, 661 P.2d 434. When the District Court followed the recommended pretrial procedures or the record was otherwise adequate to determine whether the District Court properly considered appropriate factors, we have focused our review on pretrial information that was available at the time of the

5

court's ruling on the number of peremptory challenges. See Williams v. Rigler (1988), 234 Mont. 161, 761 P.2d 833; and Lauman v. Lee (1981), 192 Mont. 84, 626 P.2d 830.

The Leary test requires adversely affected parties to show they were actually prejudiced by a grant of additional peremptory challenges to the opposing party. This places an almost impossible burden on the objecting party. Moreover, when we focus our review on the actual conduct of a juror, we ignore the correctness of the trial court's decision and that decision becomes virtually unreviewable. Hunsaker, 588 P.2d at 499. As noted by Justice Shea in that opinion, "our attention is focused on the conduct of the jury, which in most cases we are in no position to determine."

It is the policy of the law to look with disfavor on any attempt to invade the jury's internal decisionmaking processes in order to impeach verdicts, except in rare circumstances. Blades v. DaFoe (Colo. 1985), 704 P.2d 317, 322 (citing Kentucky Farm Bureau Mut. Ins. Co. v. Cook (Ky. 1979), 590 S.W.2d 875). In Kentucky Farm Bureau, the court stated:

> It may be that peremptory challenges should be abolished in civil cases and only challenges for cause allowed. We are informed this is the present English practice. As long as they are retained as part of the trial process, however, we believe that their proper allocation between litigants is a substantial right which so pervades the process that its erroneous application requires reversal as a matter of law if the issue is properly preserved by the adversely affected litigant.

Kentucky Farm Bureau Mut. Ins., 590 S.W.2d at 877. See also, Thompson v. Presbyterian Hosp., Inc. (Okla. 1982), 652 P.2d 260 (grant of additional peremptory challenges in absence of "serious

6

dispute" is prejudicial as a matter of law). While these jurisdictions are by no means the only ones which find prejudice as a matter of law for improper allocation of peremptory challenges, some courts require that actual prejudice be shown before a new trial is granted. See, e.g., Electric Serv. Co. of Duluth v. Lakehead Elec. Co. (Minn. 1971), 189 N.W.2d 489.

If we require a showing of prejudice as in Leary, we cannot evaluate the effect of an improper grant of peremptory challenges without invading the internal processes of a jury. We also should not disregard the advantages bestowed upon one side by having additional peremptory challenges granted to them. We previously modified Leary to the extent that prejudice need not be demonstrated when a trial court follows the guidelines set forth in Hunsaker. See Williams, 761 P.2d 833. We now expressly overrule Leary v. Kelly Pipe Co. to the extent it requires a showing of prejudice to reverse a jury verdict for an incorrect grant of peremptory challenges to one side.

Having concluded that Leary is an improper standard, we now restate the rule to be applied in the future: Additional peremptory challenges are granted to multiple parties on one side only if they are hostile to one another. The trial court determines hostility prior to the beginning of voir dire and bases its decision only on the facts presented to it before its ruling. Whether or not the pretrial procedures were followed prior to the determination of hostility, if an appellate review determines that peremptory challenges were improperly granted, prejudice is

7

presumed as a matter of law.

The parties seeking additional peremptory challenges must request them prior to trial. In the rare instance when the District Court holds no pretrial conference, the question of peremptory challenges should be raised by appropriate written motion filed prior to voir dire, setting forth all facts and references tending to support its claim of hostility. The trial court should rule on the peremptory challenge issue before voir dire begins. If a pretrial order is used, the District Court is required to include its decision on the number of peremptory challenges in the pretrial order. See Rule 5(c), Unif. Dist. Court Rules. To afford a basis for review, the trial court should expressly set forth in the record the reasons for its ruling and the facts on which it relied in making its decision.

The district courts have no discretion in granting additional peremptory challenges. Multiple parties on one side are either hostile or they are not hostile. A trial court correctly grants additional peremptory challenges to one side only if there are multiple defendants or plaintiffs who are "hostile" to one another. It is clear that we must look to the factual record to determine whether there is a stated rationale for the District Court's decision and a sound basis for the grant or refusal of additional peremptory challenges.

Our standard of review for a district court's conclusions of law is whether they correctly apply the proper law. Steer, Inc. v. Dept. of Revenue (1990), 245 Mont. 470, 803 P.2d 601. The record

8

in this case indicates that the District Court heard arguments from both sides and reviewed the law before ruling on the matter prior to jury questioning. The transcript provides:

> THE COURT: . . . In the meantime, the Court has had a chance to look at some of the law with regard to the preemptory [sic] challenges, and I'm not sure that the record is complete. I'd like to make a complete record, and the plaintiff's Counsel argue their position again.
>
> The Court has looked at the Hunsaker case, and also the Adams vs. Cheney case, and I would like to follow the guidelines of those cases if we can. . . .
>
> . . .
>
> The Court has considered the various positions of the parties and it's a difficult case when you don't know what exactly the proof is going to be; but the Court thinks that there is a diversity of interest between Montana Power and Entech as opposed to SRM, and the issue was raised I believe in the motion for summary judgment and the facts in support in that motion. The Court denied the motion, but found that there was [sic] genuine issues in that case as to the motion for summary judgment, which I think also goes to the positions that may be taken during the course of the trial.
>
> And the Court will find a diversity sufficient to allow the extra preemptory [sic] challenges . . . .

The District Court allowed extra peremptory challenges to the co-defendants in this case based on a "diversity of interests." SRM contends that Kudrna v. Comet Corp. (1977), 175 Mont. 29, 572 P.2d 183, articulated a rule which allows additional peremptory challenges in three distinct situations: (1) where the interests of multiple parties are "diverse;" (2) where the defenses of the multiple parties are "different;" or (3) where the defenses of the multiple parties are "hostile." This language is excerpted from a direct quote from an A.L.R. annotation set forth in Kudrna.

9

Kudrna, 572 P.2d at 186-87. A careful reading of Kudrna distinguishes the law in Montana:

> In a recent decision, Leary v. Kelly Pipe Co., 169 Mont. 511, 549 P.2d 813, 816, (1976), this Court stated:
>
> "* * * Mullery stands for the proposition that under our jury challenge statute * * * the words 'each party' in reference to the permitted four peremptory challenges means 'each side' *unless* the positions of the codefendants are hostile to each other. The opinion suggests that hostility between nominal defendants may be shown 'by pleading, representation, or evidence.'"

Kudrna, 572 P.2d at 186.

This Court has consistently held that co-defendants are entitled to excess peremptory challenges only where their positions are "hostile" to each other. See Williams, 761 P.2d 833; Gee, 679 P.2d 1194; Lauman, 626 P.2d 830; Hunsaker, 588 P.2d 493; Leary, 549 P.2d 813; and Mullery v. Great Northern Ry Co. (1915), 50 Mont. 408, 148 P. 323. Our most recent case involving a grant of additional peremptory challenges to one side reiterates the correct and relevant law:

> For this Court to uphold an uneven grant of peremptory challenges, we must be convinced that the District Court concluded from the pleadings, representations, or evidence that hostility existed and that the court set forth the reasons for its ruling.

Williams, 761 P.2d at 835 (citing Hunsaker v. Bozeman Deaconess Foundation (1978), 179 Mont. 305, 313, 588 P.2d 493, 499). The District Court here incorrectly applied the law. The interests of multiple parties on one side must be "hostile" to one another. Although the District Court based its decision on "diversity," we will examine the record to ascertain whether the defendants were

10

indeed "hostile" based on the information available to the court at the time of its ruling on peremptory challenges.

SRM contends that hostility did exist between defendants because MPC and Entech took the position that any obligations that arose as a result of King's employment relationship were the obligations of SRM only. They denied that King was their employee and that they played any part in his termination. Although SRM maintains that MPC and Entech were hostile to SRM, it admits that SRM was not hostile to MPC and Entech. SRM further argues that the same two attorneys could ethically represent all defendants, even with hostile interests present. King argues that all three defendants "enjoy a familial relationship and an identity of interest which cannot be denied."

Hostile is defined as: "having the character of an enemy; standing in the relation of an enemy. Feeling or displaying enmity or antagonism such as a hostile witness." Black's Law Dictionary 879 (6th ed. 1990). In all prior cases in which this Court has addressed "hostility," the co-defendants were unrelated individuals or corporations accused of separate and distinct wrongful acts, neither of which is the case here. We noted in Hunsaker that no specific test for "hostility" has been articulated.

> This Court has never set forth any rules as to what co-defendants must present to the trial court to prove they are "hostile" to each other. The closest we have come is we have indicated in Mullery and Leary that "hostility" can be shown by the "pleadings, representations, or evidence."

Hunsaker, 588 P.2d at 499.

Although we have not pronounced a test for the facts

11

constituting "hostility," our prior decisions are most helpful. In Kudrna, we found hostile interests where there was no identity of interest, separate acts of negligence were charged, each party presented a separate defense and each defendant blamed the other's negligence as the cause of the collision. Kudrna, 572 P.2d at 187. This Court said, "These defendants had interests and defenses antagonistic in fact. The District Court recognized this hostility and properly allowed each defendant four peremptory challenges." Kudrna, 572 P.2d at 187 (emphasis supplied). In Mullery, this Court found no hostility where defendants filed a joint answer with common defenses, they were represented by the same attorneys, and no conflict of interest or any issue of any sort was disclosed by pleading, representation, or evidence. Mullery, 148 P. at 326. In Williams, there was hostility where the claims against co-defendants were involuntarily consolidated and one set of defendant's claimed they would assert an indemnification claim against the other. Williams, 761 P.2d at 835. In Hunsaker, the following factors were relevant: (1) the defense theories of the hospital and physicians meshed although they had separate representation, (2) the co-defendants did not blame one another or assert negligence on the part of the other, (3) jury instructions were synchronized and neither objected to any of the other's offered instructions. The Court noted that each defendant had its own interests to protect in that each could have suffered an adverse jury verdict, but there was no showing that their interests were hostile to each other. Hunsaker, 588 P.2d 500-01.

12

Whether hostility is present is best addressed on a case by case basis. In this case, King's complaint asserted identical claims against all three defendants. Each defendant filed identical answers to King's complaint. These were signed by the same MPC staff attorney, Patrick T. Fleming, an employee of MPC. No cross-claims or claims for indemnification were filed by any individual co-defendant and no allegations were made that either of the other co-defendants were responsible for King's termination. Throughout the pretrial process, defendants filed consolidated motions and briefs. They consolidated their responses to discovery and their list of witnesses, exhibits and contentions in the pretrial order. All three defendants were represented by the same two MPC attorneys, who asserted their common representation and vigorously defended SRM's actions. All three defendants acted in concert, with no hostility exhibited by their efforts to prevent a verdict against SRM. Their consolidated position was that there was no breach of the covenant of good faith and fair dealing, but if the court found one, it was SRM's breach and not that of MPC and Entech.

Applying the above rule in the present case, it is clear that we need only consider the pleadings, representations and evidence presented to the District Court at the time it made its ruling. We conclude that although the three co-defendants asserted allied positions with diversified financial interests, their differences do not reach the level of hostility required for a grant of four additional peremptory challenges.

13

We hold that the grant of additional peremptory challenges to allied co-defendants constitutes reversible error under the circumstances of this case where no hostility was demonstrated between the co-defendants prior to voir dire.

## II.

Did the District Court commit reversible error by granting defendants' motion in limine prohibiting some expert testimony, and by refusing to allow plaintiff's personnel expert to present opinion testimony without further foundation?

Mr. King contends that the District Court made numerous errors which resulted in inappropriately restricting the opinion testimony of his expert, Alan Brown. Because our decision to reverse the District Court based upon an improper grant of peremptory challenges will result in a new trial, there is no reason to address this issue at this time.

## III.

Is King entitled to a new trial against Entech, Inc. and Montana Power Company?

At the close of the evidence during the trial, the District Court directed verdicts for Entech and MPC because SRM had failed to present evidence sufficient to pierce SRM's corporate veil. SRM was the only defendant to file a respondent's brief in this appeal. On the cover of its Appeal Brief, SRM removed the names of the other defendants from the caption, believing that King had no right to a new trial against them because King did not assert that the District Court erred by granting MPC and Entech directed verdicts.

14

MPC and Entech responded to King's Reply Brief which argues that a new trial will be granted as to all defendants if the District Court's decision is reversed on the issues raised. They filed a Supplemental Reply Brief which raised the issue whether King has any legal basis for asserting a right to a new trial against Entech and MPC.

MPC and Entech contend that King cannot have a new trial against either of them because King did not assert that the District Court erred in granting MPC and Entech directed verdicts. We disagree. King's Notice of Appeal preserves his right to appeal the directed verdicts against MPC and Entech because he has appealed the judgment entered by the District Court (the directed verdicts) against both MPC and Entech.

The District Court concluded that the corporate veil could not be pierced and granted directed verdicts for MPC and Entech. We will not reverse this conclusion unless it is an incorrect interpretation of the law. Steer, Inc., 803 P.2d 601. After reviewing the record, we conclude that the District Court did not err by directing these verdicts as King failed to present evidence to support piercing SRM's corporate veil.

Nonetheless, King claims that all three defendants have an interest in the outcome of these proceedings because the effect of a reversal is to make the judgment "void as if never rendered." He contends that when a new trial is granted the parties are all returned to the position they occupied before the trial and, therefore, he will be entitled to a new trial against all three

15

defendants if the District Court's judgment is reversed.

King contends that the holding of O'Brien v. Great Northern R.R. Co. (1966), 148 Mont. 429, 421 P.2d 710, applies to this case. In O'Brien, we said that to reverse a judgment makes it void as if never rendered and returns the parties to the position they occupied before the trial if a new trial is granted. O'Brien, 421 P.2d at 716. This case is distinguishable from the facts in O'Brien and the cases it relied on because multiple defendants are involved who were granted relief based on different rules of law. MPC and Entech were released by directed verdicts while SRM was relieved from liability by the jury's verdict.

Section 25-11-102, MCA, provides:

**Grounds for new trial.** The former verdict or other decision may be vacated and a new trial granted on the application of the party aggrieved for any of the following causes materially affecting the substantial rights of such party:
    (1) irregularity in the proceedings of the court, jury, or adverse party or any order of the court or abuse of discretion by which either party was prevented from having a fair trial . . .

Section 25-11-102(1), MCA.

The justification for allowing King a new trial in this case is based solely upon an irregularity in jury selection. That justification does not apply to MPC and Entech because the District Court granted directed verdicts to them both at the close of the evidence and prior to the verdict of the jury. We are reversing the jury verdict releasing SRM from liability because the composition of the jury resulting from the District Court's incorrect grant of excess peremptory challenges to non-hostile

16

defendants may have materially affected King's rights. That rationale does not apply to MPC and Entech because the issue of their liability did not reach the jury. We conclude that King is not entitled to relitigate the issues against MPC and Entech.

We hold that King is not entitled to a new trial against Entech, Inc. and Montana Power Company.

The judgment in favor of Special Resource Management, Inc. is reversed and King is granted a new trial in accordance with this opinion. The judgments favoring Montana Power Company and Entech, Inc. are affirmed.

Justice

We Concur:

Chief Justice

Justices

District Court Judge John Warner
sitting for Justice Karla M. Gray

17