No. 97-167

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 112


ANITA K. BUELING, surviving spouse
and personal representative of the Estate
of DAVID S. BUELING,

Plaintiff and Appellant,

v.

DOUGLAS E. SWIFT, M.D.
and DAVID ANDERSON, M.D.,

Defendants and Respondents.



APPEAL FROM:   District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable John R. Christensen, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

John C. Doubek; Small, Hatch, Doubek & Pyfer, Helena,
Montana

For Respondents:

James E. Aiken; Jardine, Stephenson, Blewett & Weaver,
Great Falls, Montana (for Dr. Swift); John Maynard, Marcia Davenport; Browning,
Kaleczyc, Berry
& Hoven, Helena, Montana (for Dr. Anderson)



Submitted on Briefs: April 2, 1998

Decided:   May 5, 1998
Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    Appellant Anita Bueling (Bueling) appeals from the April 10, 1997 order of the Eighth Judicial District Court, Cascade County, denying Bueling's motions to set aside the jury verdict and for a new trial. We reverse in part, affirm in part, and remand for a new trial.

¶2    Bueling raises the following issues:

¶3    1. Did the District Court err in granting Respondents Dr. Douglas Swift (Dr. Swift) and Dr. David Anderson (Dr. Anderson) four peremptory challenges each?

¶4    2. Did the District Court err in granting Respondents' motion in limine prohibiting Dr. Randall Schaffer (Dr. Schaffer) from testifying as a fact witness for Bueling?

                  Factual and Procedural Background

¶5    In the afternoon of September 11, 1993, Bueling's husband, David, who was suffering from flu-like symptoms, visited the Doctor's Convenience Care Clinic in Great Falls. The doctor on duty at the clinic, Dr. William Gertson (Dr. Gertson), determined that David was quite ill and immediately ordered that he be transported by ambulance to the Columbus Hospital Emergency Room (ER). David's regular physician was not on call, and that doctor's patients were being covered by Dr. Swift, an internist. Dr. Gertson contacted Dr. Swift and informed him that David was very ill and being transferred to the ER.

¶6    David arrived at the ER at approximately 2:45 p.m., where he was examined by Dr. Betty Kuffel (Dr. Kuffel). The parties dispute the time at which Dr. Swift arrived at the ER. Bueling maintains that Dr. Swift did not arrive until about 5:45 p.m., nearly three hours after David was admitted. Dr. Swift testified that he arrived at about 3:30 p.m. The director of medical records testified that Dr. Swift's notes indicated that he dictated David's medical history and physical examination at 5:44 p.m.

¶7    After examining David, Dr. Swift consulted with Dr. Anderson, a pulmonologist, over the telephone. Dr. Anderson testified that he received the phone call from Dr. Swift between 4:15 and 4:30 p.m. Dr. Swift told Dr. Anderson that David was very ill with bilateral pulmonary infiltrates and possibly pneumonia. Dr. Anderson agreed to see David and initiated his transfer to the Intensive Care Unit. Dr. Anderson examined David at about 6:30 p.m. Dr. Anderson performed a bronchoscopy and inserted a Swan-Ganz catheter into David's pulmonary artery to obtain cardiac output data. David died of a heart attack before Dr. Anderson received the data. It was later determined that David was suffering from hantaviral pulmonary syndrome, the first reported case in Montana.

¶8  Bueling filed a wrongful death and survival action against Drs. Swift and Kuffel and Columbus Hospital.  During the discovery phase, Bueling amended her complaint to add Dr. Anderson as a defendant.  Subsequently, Bueling moved the District Court to limit the number of peremptory challenges allowed the defendants collectively to four.  Bueling argued that because the defendants were not hostile to each other, they should not receive additional peremptory challenges.  At the pretrial conference, the District Court determined that Drs. Swift and Anderson would each get four peremptory challenges and that Dr. Kuffel and Columbus Hospital, who were represented by the same counsel, would share four.

¶9  At the pretrial conference, the District Court also granted Dr. Anderson's motion in limine to prevent Bueling from calling Dr. Schaffer as a witness.  Dr. Schaffer is a family friend of the Buelings who examined David's records at Columbus Hospital a week after his death.  Bueling sought to call Dr. Schaffer to testify as an expert witness on the standard of care and as a fact witness regarding what he found in David's file.  The District Court found that Dr. Schaffer was not qualified as an expert and that the jury would be likely to confuse his fact testimony with that of an expert.  The District Court ruled that Dr. Schaffer would not be allowed to testify.

¶10  Prior to trial, Bueling settled with Dr. Kuffel and Columbus Hospital. She did not ask the court to reconsider its decision on peremptory challenges prior to trial.  The case proceeded to trial, and Drs. Swift and Anderson each exercised four peremptory challenges.  A jury entered a verdict in their favor, finding no negligence on the part of either doctor.  Bueling filed motions to set aside the jury verdict and for a new trial.  The District Court denied her motions.

                    Discussion

¶11  1. Did the District Court err in granting Drs. Swift and Anderson four peremptory challenges each?

¶12  In King v. Special Resource Management (1992), 256 Mont. 367, 374, 846 P.2d 1038, 1042, this Court specifically set forth a procedure for district courts to follow in determining whether to grant additional peremptory challenges:

    Additional peremptory challenges are granted to multiple parties
    on one side only if they are hostile to one another.   The trial
    court determines hostility prior to the beginning of voir dire and
    bases its decision only on the facts presented to it before its
    ruling.  Whether or not the pretrial procedures were followed
    prior to the determination of hostility, if an appellate review
    determines that peremptory challenges were improperly granted,
    prejudice is presumed as a matter of law.

        The parties seeking additional peremptory challenges
    must request them prior to trial.  In the rare instance when the
    District Court holds no pretrial conference, the question of
    peremptory challenges should be raised by appropriate written

motion filed prior to voir dire, setting forth all facts and references tending to support its claim of hostility. The trial court should rule on the peremptory challenge issue before voir dire begins. If a pretrial order is used, the District Court is required to include its decision on the number of peremptory challenges in the pretrial order. To afford a basis for review, the trial court should expressly set forth in the record the reasons for its ruling and the facts on which it relied in making its decision. [Citations omitted.]

¶13 In this case, Bueling moved the District Court to limit the number of peremptory challenges allowed the defendants collectively to four. At the pretrial conference, the court granted four challenges to Dr. Swift, four to Dr. Anderson, and four to Columbus Hospital and Dr. Kuffel. The following discussion provides the District Court's rationale:

> The Court: . . . [T]here is a question that was raised in the pretrial order regarding number of peremptory challenges. My reading of the law is the doctors are adverse to each other, each of them will receive four peremptory challenges, Dr. Kuffel and Columbus Hospital, they will receive four peremptory between the two of them. They are represented by the same counsel, I don't believe their interests are adverse in this case.

> Mr. Walsh [counsel for Dr. Kuffel]: We agree.

> The Court: Mr. Dubek, I recognize the case you cited, but the answer to me that these doctors, reading the depositions and who they are going after, they are saying it's somebody else's problems rather than their own, they are --

> Mr. Dubek [counsel for Bueling]: For the record, I don't think anywhere in [any] of the depositions does one defendant point the finger at the other defendant, according to that case we cited, it's incumbent upon the defendants to seek out and demonstrate to the court they are hostile, and they haven't done that. Therefore, I think we are entitled to maintain that each side has four peremptory challenges.

> . . . .

> Mr. Aiken [counsel for Dr. Swift]: I make the comment, Judge, certainly there is a clear delineation in care that occurred at 6:30. I don't know any of us of [sic] raised specifically somebody else's defense, I think the court is correct that at 6:30 the transfer of care occurred.
> I think the court can do whatever it wants in the number of peremptories, and some sort, of either four to each of the physicians and four to the hospital, and Dr. Kuffel, or some compromise thereof, I think would be fair.

The Court: Okay. Mr. Walsh, do you have argument?

Mr. Walsh: If you analyze the case in terms of breach of duty, the doctors pretty much agree. They all agree no one breached a duty. The case involves existence of duty. It looks that way. There are definite distinctions between physicians. Dr. Kuffel -- I am taking the position, she never was the primary treating physician, and her duty was seriously limited. Dr. Swift may not agree with that. The issue of intent and when duties changed between Dr. Swift and Anderson, look at it that way; each need four separate. They are not necessarily attacking each other, but their interests are distinctly different. There is potential for one physician to escape liability at possibly the expense of another. That's all you need.

. . . .

The Court: All right. I will stand by original ruling on that . . . .

Bueling argues that because the defendants failed to set forth sufficient facts to show hostility and because the defendants did not move the court for additional peremptories, the District Court erred in granting them.

¶14 We do not agree with Bueling that a defendant must move for additional peremptories before the District Court is allowed to grant them. Bueling moved the court to consider the issue of additional peremptories, and the District Court addressed it. However, in addressing the issue, the District Court failed to make specific findings in the pretrial order or on the record to explain its decision to grant additional peremptory challenges. The procedure set forth in King is meant to afford this Court a basis of review, and the District Court erred in disregarding it. As stated in Hunsaker v. Bozeman Deaconess Foundation (1978), 179 Mont. 305, 317, 588 P.2d 493, 501, "if there is not a sound basis in the record at the time of the ruling, and if the reasons for the ruling are not set forth, we cannot say the parties have had the benefit of the trial court's best judgment." However, King requires this Court to review the District Court's grant of peremptory challenges regardless of whether it followed the appropriate pre-trial procedures. King, 846 P.2d at 1042. Thus, we review the record at the time of the District Court's ruling to determine whether the peremptory challenges were properly granted.

¶15 Section 25-7-224, MCA, states that "each party is entitled to four peremptory challenges . . . ." This Court has interpreted "each party" to mean each side, unless the codefendants are hostile to one another. Leary v. Kelly Pipe Co. (1976), 169 Mont. 511, 549 P.2d 813, overruled on other grounds by King, 846 P.2d at 1042. As we noted in King, "district courts have no discretion in granting additional peremptory challenges. Multiple parties on one side are either hostile or they are not hostile." King, 846 P.2d at 1042-43. The district court must determine hostility on a case-by-case basis. King, 846 P.2d at 1044.

¶16  We reviewed the district court's finding of hostility in Hunsaker, 588 P.2d at 493.  Hunsaker was admitted to the hospital with heart problems and suffered serious emotional strain resulting in nervousness, hallucinations, and a seizure while in the hospital's care.  Hunsaker, 588 P.2d at 497.  Ultimately, Hunsaker was injured when he left his hospital security room, ran down the hall, jumped through a solarium window, and fell twenty feet to the ground.  Hunsaker, 588 P.2d at 497.  Hunsaker filed an action against Bozeman Deaconess Foundation, operator of the hospital, alleging that the hospital was negligent in caring for him.  Hunsaker, 588 P.2d at 497.  He filed a separate action against the treating physicians for their negligent diagnosis and care.  Hunsaker, 588 P.2d at 497.  His wife also filed a negligence claim against the hospital for loss of consortium.  Hunsaker, 588 P.2d at 497.  Over Hunsaker's objection, the district court consolidated the three actions and, at trial, granted each defendant four peremptory challenges.  Hunsaker, 588 P.2d at 498.  The jury returned a verdict for the defendants.  Hunsaker, 588 P.2d at 497.

¶17  On appeal, Hunsaker argued that the district court erred in granting additional peremptory challenges because the defendants had not made the requisite showing of hostility.  Hunsaker, 588 P.2d at 498.  This Court agreed, finding that "[t]he defense theories of the hospital and defendant physicians meshed like the finest gearshift mechanism."  Hunsaker, 588 P.2d at 500.  We noted that though each defendant was represented by separate counsel, each essentially asserted no negligence on its part or on the part of the other defendants.  Further, we held: "Defendants did not try to pass the blame off to each other.  It is true each defendant had his own interest to protect in that each could have suffered an adverse jury verdict--but there is no showing that their interests were hostile to each other."  Hunsaker, 588 P.2d at 500-01.

¶18  At the pretrial conference, counsel for defendants argued that while they "are not necessarily attacking each other, . . . their interests are distinctly different.  There is potential for one physician to escape liability at possibly the expense of another.  That's all you need."  To the contrary, this Court held in Hunsaker that a defendant's interest in protecting him or herself from an adverse jury verdict does not necessarily indicate hostility toward codefendants.

¶19  Drs. Swift and Anderson argue that Bueling alleged separate acts of negligence against each defendant occurring at separate times.  Dr. Anderson also asserts that Dr. Swift's theory--that David was in a stable condition when care was transferred to Dr. Anderson--implicitly shifts responsibility to him.  In Kudrna v. Comet Corp. (1977), 175 Mont. 29, 572 P.2d 183, this Court did state that allegations of separate acts of negligence against each defendant suggest hostility.  Kudrna is distinguishable; in that case, not only did each party present a separate defense, but also blamed the negligence of the other for the accident.  Kudrna, 572 P.2d at 187.  In this case, both doctors assert that they were not negligent in their diagnosis and care of David.  Dr. Swift did not plead any affirmative defenses or cross-claim against Dr. Anderson, and Dr. Anderson's affirmative defenses, i.e., failure to state a claim and contributory negligence, do not suggest any hostility toward Dr. Swift.  Further, we do not agree that by maintaining that his care of David was not

negligent, Dr. Swift was necessarily implying that Dr. Anderson's care was negligent. Nothing in the record supports such an implication.

¶20 Dr. Swift argues that he and Dr. Anderson retained separate counsel, filed separate answers, conducted separate discovery, and were insured by different insurers. In Hunsaker, each defendant retained separate counsel, and the claims against each were brought in an entirely separate action; however, we determined that the defendants' interests and theories of defense were not hostile. Hunsaker, 588 P.2d at 500. Likewise, in this case, the record does not contain sufficient evidence on which to base a finding of hostility. We hold that the District Court erred in granting Drs. Swift and Anderson additional peremptory challenges.

¶21 This Court has held that when one side is granted additional peremptory challenges in error, a new trial must be granted. King, 846 P.2d at 1042. In King, we noted that with a grant of additional peremptory challenges comes a tactical advantage that is unmistakable, but nearly impossible to prove. King, 846 P.2d at 1042. The difficulty of proving that one was prejudiced by the improper grant of additional peremptories caused this Court to overrule its previous case law and hold that "if an appellate review determines that peremptory challenges were improperly granted, prejudice is presumed as a matter of law." King, 846 P.2d at 1042 (overruling Leary, 549 P.2d at 813).

¶22 Accordingly, we hold that Bueling was prejudiced by the District Court's grant of additional peremptory challenges. We reverse and remand for a new trial.

¶23 2. Did the District Court err in granting Respondents' motion in limine prohibiting Dr. Schaffer from testifying as a fact witness for Bueling?

¶24 A district court has broad discretion to determine whether evidence is admissible; thus, we will not overturn a district court's evidentiary ruling absent an abuse of discretion. Waller v. Hayden (1994), 268 Mont. 204, 885 P.2d 1305. In this case, the District Court found that the jury would likely confuse Dr. Schaffer's testimony with that of a medical expert. Thus, it precluded Dr. Schaffer from testifying regarding his review of David's medical records.

¶25 Dr. Schaffer resides in Ohio and has been a friend of the Bueling family for about 20 years. When he was in town for David's funeral, the family asked Dr. Schaffer if he would review David's records at Columbus Hospital. Bueling contends that Dr. Schaffer was prepared to testify that when he reviewed David's records the week after his death, he found them void of a history and physical examination. Bueling argues that Dr. Schaffer's testimony would have supported her theory that David did not receive adequate or timely care and that the history and physical examination found in David's records were fabricated by Dr. Swift after the fact.

¶26 Under Rule 403, M.R.Evid., relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." After reviewing Dr.

Schaffer's deposition, the District Court found his proffered testimony to have minimal probative value. When asked about whether he recalled seeing the history and physical examination in David's medical records, Dr. Schaffer testified: "I don't recall seeing that. Now, that doesn't mean it wasn't there. I'm just saying I don't recall seeing it." We agree with the District Court that, assuming Dr. Schaffer's testimony was relevant, it was of minimal probative value.

¶27 Further, Bueling called other medical doctors to testify as experts at trial regarding the standard of care. The District Court determined that if it allowed Dr. Schaffer to testify as to his review of David's records, the jury would likely confuse his testimony with that of an expert. We hold that the District Court did not abuse its discretion in finding that the minimal probative value of Dr. Schaffer's testimony was outweighed by the possibility of confusing or misleading the jury and prejudicing Drs. Anderson and Swift. Thus, we affirm the District Court's granting of the motion in limine prohibiting Dr. Schaffer from testifying.

¶28 Based on the foregoing, we reverse in part, affirm in part, and remand to the District Court for a new trial.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ J. A. TURNAGE
/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ WILLIAM E. HUNT, SR.
/S/ JIM REGNIER
/S/ TERRY N. TRIEWEILER