No. 00-795

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 60

REFF-CONLIN'S INC., CONLIN'S OF GRAND FORKS, INC.,
and CONLIN'S CONTRACT SERVICE, INC.,

Plaintiff/Respondent/Cross-Appellant,

v.

FIREMAN'S FUND INSURANCE COMPANY and
WESTERN STATES INSURANCE COMPANY, INC.,

Defendants/Appellant/Cross-Respondent.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Susan P. Watters, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

L. B. Cozzens, Cozzens, Warren & Harris, P.L.L.P., Billings, Montana

For Respondent:

James L. Jones, Dorsey & Whitney, LLP, Billings, Montana

Submitted on Briefs: January 17, 2002

Decided:    March 28, 2002
Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1    The Plaintiff, Reff-Conlin's Inc., brought this action in the District Court for the Thirteenth Judicial District in Yellowstone County to recover compensation for losses caused when the Red River flooded Conlin's Grand Forks, North Dakota, furniture store.  Named as defendants were its insuror, Fireman's Fund Insurance Company, and its insurance agent, Western States Insurance Company.  Conlin's settled with Fireman's Fund but proceeded to trial against Western States.  The jury found that Western States negligently procured flood insurance for the Grand Forks store and negligently misrepresented its efforts to obtain the insurance and is 100% liable for Conlin's damages.  Following a post-trial hearing to determine damages, the District Court entered judgment in favor of Conlin's.  Western States appeals from the judgment of the District Court and Conlin's cross-appeals.  We reverse the District Court and remand for a new trial.

¶2    Although numerous issues are raised on appeal and cross-appeal, our resolution of the following issue requires a new trial and therefore we decline to address additional issues:

¶3    Did the District Court err when it denied Western's challenge for cause of potential juror Derrig?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4    On April 19, 1997, the Red River flooded Reff-Conlin's Inc.'s furniture store in Grand Forks, North Dakota.  At the time of the flood, Conlin's was insured by the Defendant Fireman's Fund, Inc., through its agent, Defendant Western States, Inc., an independent insurance agency with fourteen offices across Montana.

¶5    Conlin's filed a complaint in the District Court for the Thirteenth Judicial District in Yellowstone County on August 19, 1997.  Conlin's alleged that it asked Western to add flood insurance to the Grand Forks store's existing policy in March 1997.  However, Fireman's failed to inform Western that no flood insurance would be offered until April 18, 1997, the day before the dikes protecting Grand Forks broke.

¶6    Conlin's claimed: (1) that Fireman's breached its contract to insure the store; (2) that Fireman's and Western committed constructive fraud and negligent misrepresentation in handling Conlin's flood insurance request; (3) that Fireman's negligently handled Conlin's request for flood insurance; (4) that Fireman's and Western breached the implied covenant of good faith and fair dealing; (5) that Fireman's conduct in handling Conlin's insurance claim violated the Unfair Claims Settlement Practices Act; (6) that Western negligently handled Conlin's request for flood insurance; and (7) that the conduct of the Defendants amounted to actual fraud and malice which entitled Conlin's to punitive damages.

¶7    In an Amended Complaint filed September 8, 1998, Conlin's further alleged that Fireman's made representations about coverage upon which Conlin's relied and that Fireman's should therefore be

estopped from relying on a policy exclusion for damage caused by flood. Finally, Conlin's contended that Western breached its contract with Conlin's.

¶8    The essence of Conlin's argument at the District Court was that an existing Fireman's policy covered $329,000 of its $665,000 loss. Moreover, Conlin's alleged that Fireman's was negligent for failing to inform either Western or Conlin's of its decision not to offer flood insurance until it was too late for Conlin's to look elsewhere. Conlin's alleged that Western was negligent for failing to procure flood insurance and negligently misrepresented that flood insurance would be acquired for the Grand Forks store.

¶9    Conlin's and Fireman's reached a confidential settlement agreement, and the District Court filed a May 10, 1999, order which dismissed Fireman's with prejudice as a defendant. A general release of all Conlin's claims against Fireman's was subsequently filed on September 3, 1999. However, Conlin's proceeded to trial against Western, which made a claim for contribution against Fireman's.

¶10    On January 21, 1999, Western filed a motion for summary judgment. Western argued that Conlin's had never specifically requested that Western procure flood insurance for the Grand Forks store. Western further argued that it had no duty to procure flood insurance pursuant to its contract with Conlin's.

¶11    The District Court granted Western's summary judgment motion on the breach of contract and constructive fraud claims, concluding that Western had no contractual obligation to provide flood insurance. However, the District Court concluded that issues of material fact precluded summary judgment on the breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, and negligence claims. Conlin's proceeded to trial against Western on these remaining claims.

¶12    During voir dire prospective juror Martin Derrig disclosed that he was president of US Bank, which, at the time of trial, was represented by Conlin's trial counsel; that he had in the past worked with that firm as bank president; and that U.S. Bank was one of Conlin's creditors.

¶13    Western challenged Derrig for cause twice during voir dire. The District Court denied both challenges. Western then used one of its peremptory challenges to remove Derrig from the jury panel. Western used all of its peremptory challenges during jury selection.

¶14    Following a seven day trial, the jury found that Western was negligent in the procurement of flood insurance for the Grand Forks store and that Western negligently misrepresented its efforts to obtain the insurance. The jury attributed 100% of the liability to Western.

¶15    After a post-trial hearing on damages, the District Court offset $146,849, added interest, and entered judgment in favor of Conlin's for $615,030. Western now appeals from that judgment and Conlin's cross-appeals. We reverse and remand for a new trial.

## STANDARD OF REVIEW

¶16     We will review a district court's refusal to grant a challenge for cause for an abuse of discretion.

## DISCUSSION

¶17     Did the District Court err when it denied Western's challenge for cause of potential juror Derrig? Western contends that the District Court erroneously denied its challenge for cause to prospective juror Derrig.  Because Western was forced to use a peremptory challenge to prevent Derrig from serving, and because Western used all of its peremptory challenges, Western now maintains that it was correspondingly denied an equal number of peremptory challenges and is therefore entitled to a new trial.

¶18     At trial, Western asserted two bases for challenging Derrig for cause. Western challenged Derrig based on the debtor-creditor relationship between Conlin's and US Bank and Western challenged Derrig due to the potential for bias arising from his attorney-client relationship with Conlin's trial attorneys. Each of these challenges for cause was denied and Western was forced to use a peremptory challenge to exclude Derrig from the jury.

### 1.    Debtor - Creditor Relationship

¶19     Derrig revealed during voir dire that US Bank provided financing for Conlin's.  The District Court denied Western's challenge for cause based on US Bank's creditor relationship with Conlin's.  Western now maintains that as president of US Bank, Derrig had a professional interest in Conlin's recovery of it flood losses and, therefore, its challenge should have been granted.  Conlin's contends that Derrig is merely an employee of a creditor and that the District Court considered the relevant facts and properly concluded that Derrig could be impartial.

¶20     Section 25-7-223(3), MCA, provides that "[c]hallenges for cause may be taken" on the grounds that a debtor-creditor relationship exists between the juror and either party.  We conclude that there is no substantive difference between the Chief Executive Officer of a creditor who is responsible for the creditor's success and the creditor itself when it comes to impartiality and jury duty.  To hold otherwise would exalt form over substance.  Therefore, we conclude that the District Court abused its discretion when it denied Western's challenge to Derrig based on the debtor-creditor relationship of Conlin's and US Bank.

### 2.  Attorney-Client Relationship

¶21     Derrig also stated during voir dire that US Bank was represented by the attorneys for Conlin's and that he had worked with attorneys from that firm.  Derrig revealed that as president, he was one of two people who made decisions with regard to which firm the bank would use.  When questioned, however, Derrig said that he could be fair and impartial despite his professional relationship with Conlin's trial attorneys.

¶22     Western contends that Derrig should have been removed for cause because of US Bank's

relationship with Conlin's trial counsel.  Conlin's counters that there was no attorney-client relationship between its attorneys and Derrig.  Rather, any professional relationship was between the attorneys and US Bank.  Western replies that any distinction between personal and corporate representation is eroded where the potential juror is an officer, director, or shareholder of the corporation and notes that as president of US Bank, Derrig had a professional interest in his relationship with opposing counsel.

¶23    Section 25-7-223, MCA, lists the grounds for challenge to jurors for cause in civil actions. Although the statute does not specifically address a current attorney-client relationship, Western suggests that such a relationship might be covered by subparagraph (5), which permits challenges for cause when the prospective juror has an interest in "the event of the action," or by subparagraph (7), which permits challenges on the basis of "the existence of a state of mind ... evincing enmity against or bias in favor of either party."  See §§ 25-7-223 (5), (7), MCA.

¶24    We have not previously addressed the issue of whether a district court abuses its discretion by refusing a challenge for cause based on a current relationship between an attorney representing one of the parties and a prospective juror.  We have, however, had occasion to discuss the propriety of denying a challenge for cause based on an attorney's past relationship with a prospective juror.  In Williams v. Rigler (1988), 234 Mont. 161, 761 P.2d 833, two jurors considered defense counsel to be their attorney, but neither had any business pending with the attorney at the time of trial.  When asked by the judge, one of the jurors answered that her past relationship would not affect her ability to act as a juror.  We upheld the District Court's denial of plaintiff's challenge for cause, stating: "Because the District Court confirmed that no present business was pending between either of the jurors and defense counsel, we find no abuse of discretion by the District Court in refusing Williams' challenges for cause."  Williams, 234 Mont. at 164, 761 P.2d at 835.

¶25    Unlike the juror in Williams, Derrig had an ongoing relationship with Conlin's attorneys. Moreover, Derrig was one of the people at US Bank responsible for hiring Conlin's attorneys, which strongly suggests that he had a favorable opinion of their work.  An ongoing attorney-client relationship between a prospective juror and trial counsel presents the strong possibility of bias in favor of the party represented by those attorneys.

¶26    We conclude that the District Court should have granted Western's challenge for cause pursuant to § 25-7-223(7), MCA.  Accordingly, we hold that the District Court erred when it denied Western's challenge for cause on the basis of an attorney-client relationship.

¶27    Prior decisions of this Court have established the principle that when a district court erroneously denies a challenge for cause, we presume that one party was prejudiced and is therefore entitled to a new trial.  We explained the rationale for presuming prejudice as a matter of law in State v. Williams (1993), 262 Mont. 530, 866 P.2d 1099, rev'd in part on other grounds, State v. Good, 2002 MT 59, __ Mont. __, __ P.3d __, a criminal case where we looked at the advantage created for one party when the other party had to use a peremptory challenge to remove even one juror who should have been removed by the District Court for cause. We held that:

When jurors who should have been removed for cause are not removed and must,

therefore, be removed by peremptory challenge, the party whose challenge for cause was wrongfully denied effectively loses one of the peremptory challenges provided for by law. In other words, the effect of the district court's abuse of discretion in this case was to reduce defendant's number of peremptory challenges to five, rather than six.

Williams, 262 Mont. at 537, 866 P.2d at 1103.

¶28   When one party receives more peremptory challenges than an opponent, that party has a tactical advantage that is unmistakable, but nearly impossible to prove. See King v. Special Resource Management, Inc., (1993), 256 Mont. 367, 371-74, 846 P.2d 1040-42. In these circumstances "prejudice is presumed as a matter of law." King, 256 Mont. at 374, 846 P.2d at 1042.

¶29   In King, the plaintiff sued the Montana Power Company and two subsidiaries for wrongful discharge from employment. The defendants were each given eight peremptory challenges to the jury compared to King's four. This Court concluded that defendants had not demonstrated sufficient hostility to justify additional peremptory challenges. More importantly, however, the Court recognized the beneficial effect of extra peremptory challenges and explained why, when they are received, prejudice must be presumed whether or not it can be demonstrated. We noted that up until that time Leary v. Kelly Pipe Co. (1976), 169 Mont. 511, 549 P.2d 813, required that a party claiming prejudice based on extra peremptory challenges was required to prove that he or she had in fact been prejudiced. We then outlined the difficulty of meeting this requirement:

> The Leary test requires adversely affected parties to show that they were actually prejudiced by a grant of additional peremptory challenges to the opposing party. This places an almost impossible burden on the objecting party. Moreover, when we focus on review on the actual conduct of a juror, we ignore the correctness of the trial court's decision and that decision becomes virtually unreviewable. Hunsaker, 588 P.2d at 499. As noted by Justice Shea in that opinion, "our attention is focused on the conduct of the jury, which in most cases we are in no position to determine."

> It is the policy of the law to look with disfavor on any attempt to invade the jury's internal decision making processes in order to impeach verdicts, except in rare circumstances. In Kentucky Farm Bureau, the court stated:

>> It may be that peremptory challenges should be abolished in civil cases and only challenges for cause allowed. We are informed that this is the present English practice. As long as they are retained as part of the trial process, however, we believe that their proper allocation between litigants is a substantial right which so pervades the process that its erroneous application requires reversal as a matter of law if the issue is properly preserved by the adversely affected litigant. (citations omitted).

. . .

If we require a showing of prejudice as in Leary, we cannot evaluate the effect of an improper grant of peremptory challenges without invading the internal processes of a jury. We also should not disregard the advantages bestowed upon one side by having additional peremptory challenges granted to them. We previously modified Leary to the extent that prejudice need not be demonstrated when a trial court follows the guidelines set forth in Hunsaker. See Williams, 761 P.l2d 833. We now expressly overrule Leary v. Kelly Pipe Co. to the extent it requires a showing of prejudice to reverse a jury verdict for an incorrect grant of peremptory challenges to one side.

King, 256 Mont. at 373-74, 846 P.2d at 1042.

¶30 We have recently followed the rule announced in King and reinforced its rationale in Bueling v. Swift, 1998 MT 112, 288 Mont. 472, 958 P.2d 694, and in Armstrong v. Gondeiro, 2000 MT 326, 303 Mont. 37, 15 P.3d 386. Therefore, Williams stands for the principle that when a district court erroneously denies a challenge for cause, it is the substantive equivalent of granting one side more peremptory challenges than the other which, as we held in King, is prejudicial as a matter of law. Because an erroneous ruling on a challenge for cause is presumed prejudicial as a matter of law, we reverse the District Court and remand for a new trial.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ KARLA M. GRAY
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON

Justice Patricia O. Cotter dissents.

¶31 I agree with the majority's conclusions that the District Court erred when it denied Western's challenge for cause on the basis of the attorney-client relationship. Moreover, I agree with the majority's conclusion that when one party receives more peremptory challenges than an opponent, prejudice is presumed. However, I dissent from the majority's conclusion that once prejudice is presumed, the inquiry ends and the jury's verdict must be reversed. In my judgment, the presumption of prejudice was rebutted here, and therefore the verdict should have been affirmed.

¶32 The majority cites the case of State v. Williams (1993), 262 Mont. 530, 866 P.2d 1099, for the

proposition that, once a district court erroneously denies a challenge for cause, the error is deemed prejudicial as a matter of law, the inquiry ends, and the verdict must be reversed. Williams, ¶ 27. Recently, the application of State v. Williams to the erroneous denial of a challenge for cause in a criminal case was reconsidered by this Court. In State v. Good, 2002 MT 59, ___ Mont. ___, ____ P.3d ___, this Court, relying upon State v. Van Kirk, 2001 MT 184, 306 Mont. 215, 32 P.3d 735, concluded that where a district court abuses its discretion in denying a challenge for cause, the defendant must use one of his peremptory challenges to remove the disputed juror, and the defendant thereby exhausts all of his peremptory challenges, the district court's denial of the subject challenge for cause will be deemed structural error and thus automatically reversible. To the extent that State v. Williams had previously required a defendant both to establish the foregoing elements, and establish that the error contributed to the defendant's conviction, we overruled Williams.

¶33 I concurred in the majority's conclusion in State v. Good that a district court's abuse of discretion in failing to grant a challenge for cause during voir dire in a criminal case should be considered a structural error that is conclusively prejudicial. As I noted in my concurring opinion in State v. Good:

> In light of the necessity for a unanimous verdict in a criminal case, one prospective juror lost to the defendant due to an erroneous denial of a challenge for cause could clearly mean the difference between conviction and either acquittal or a hung jury.

However, I wrote separately to state that I would limit the Court's holding in this regard to criminal cases only, and would apply a different test in civil cases. I write here to suggest what that test would be, and to dissent from the Court's conclusion that a district court's abuse of discretion in failing to grant a challenge for cause in a civil case is conclusively prejudicial.

¶34 In its argument for the application of the "conclusively prejudicial" test in civil cases, the majority relies on King v. Special Resource Management (1993), 256 Mont. 367, 846 P.2d 1038, where we held that, when one party receives more peremptory challenges than an opponent, prejudice is presumed as a matter of law. In King, the circumstances were substantially different than those presented here. The plaintiffs complained in King that the district court erred by granting eight peremptory challenges to the defendants Montana Power Company and its two non-hostile subsidiary corporations, while granting only four peremptory challenges to the plaintiffs. Thus, the defendants had twice the peremptory challenges available to them than the plaintiffs had. We concluded in King that a showing of prejudice by the party disadvantaged by the disparity in peremptory challenges would no longer be required to support reversal of a jury verdict. While we said in King that prejudice under such circumstances is presumed as a matter of law, we never said the presumption of prejudice was conclusive.

¶35 Five years after King was decided, this Court gratuitously expanded the King holding when we said in dicta in State v. DeVore, 1998 MT 340, 292 Mont. 325, 972 P.2d 816, a criminal case, that "the rule in a civil context is that when one party has been erroneously denied an equal number of peremptory challenges, we presume prejudice as a matter of law and automatically grant the offended party a new trial." DeVore, ¶36. Thus, in DeVore, we announced for the first and only time (until today)

that in the civil setting, we will both presume prejudice and automatically grant reversal where a challenge for cause is erroneously denied.

¶36   I submit that, while error should be presumed when a challenge for cause in a civil case is erroneously denied, that presumption should not be conclusive.  Rather, I would allow the presumption to be rebutted.  I am not advocating a return to the rule adopted in Leary v. Kelly Pipe Company (1976), 169 Mont. 511, 549 P.2d 813, where we held that the party urging reversal of a jury verdict for an incorrect grant of peremptory challenges must demonstrate or show prejudice in order to obtain the result.  We overruled Leary, in King v. Special Resource Management, 256 Mont. at 374, 846 P.2d at 1042, and properly so.  Requiring a party urging reversal of a verdict to demonstrate prejudice flies in the face of our holding in King that we will presume prejudice from a district court's error in failing to strike a juror for cause.  Rather, once prejudice is presumed, the burden to overcome that presumption should be placed on the party who received the benefit of the extra peremptory challenge.  That party-- and not the appellant--should be required, once error is established and prejudice presumed, to demonstrate that there is no reasonable possibility that the District Court's error contributed to the verdict.  We had the test right in Leary.  The problem is we imposed the burden on the wrong party.

¶37   The test I propose here, requiring the prevailing party to demonstrate that there is no reasonable possibility the error contributed to the verdict, is not new to our jurisprudence.  We recently announced the adoption of a similar analytical framework in Van Kirk, ¶ 47, holding that when considering trial errors, the State as prevailing party must demonstrate there is no reasonable possibility that erroneously admitted evidence contributed to the defendant's conviction.  We have thus demonstrated our willingness and ability to engage in this type of "reasonable possibility the error contributed to the verdict" analysis in criminal cases.  There is simply no reason we cannot engage in a similar analysis, if necessary, in a civil case.

¶38   There is a fundamental reason for my belief that the test should be different in civil cases than in criminal cases.  The verdict in criminal cases must be unanimous.  The one prospective juror lost to the defendant because of the court's erroneous denial of a challenge for cause could have been the one who would vote against conviction, make a finding of guilt impossible.  In the civil case, though, while the loss of one prospective juror could be pivotal, it may not always be so.  This is because unanimity is not required of a civil jury.  Thus,  while one lost juror could make all the difference in the criminal case, it may be immaterial and therefore not even potentially prejudicial in a civil case.  This case illustrates the point exactly.

¶39   Reff-Conlin argued that the differential of one peremptory challenge could not have made a difference in the outcome of the verdict.  In light of the fact that the verdict for the plaintiff here was unanimous, which the majority fails to mention, Reff-Conlin is right.  There is simply no reasonable possibility that the erroneous denial of the challenge for cause at issue here could have contributed to the verdict.  The plaintiff needed the votes of only eight of twelve jurors in order to obtain a verdict in its favor.  However, it secured the votes of all twelve.  In order for the defendant to have prevailed in this case, it would have needed eight jurors to vote for a defense verdict.  There is simply no reasonable possibility that with the addition of one peremptory challenge, Western would have swayed eight of the unanimous twelve jurors who voted in favor of the plaintiff to vote for the contrary result.

¶40    It is in cases like this that the presumption of prejudice can be irrefutably overcome.  Obviously, in cases in which the verdict is not unanimous, the prevailing party that received the benefit of the extra peremptory challenge would have a more difficult burden to meet.   If he or she could not meet the burden of demonstrating that there is no reasonable possibility that the error contributed to the verdict, then the presumption of prejudice would be unrebutted and reversal would be required.

¶41    In sum, I would hold that in those civil cases where the losing party could demonstrate that the district court erroneously denied one or more of its challenges for cause, prejudice to that party would be presumed.  The prevailing party would then have the opportunity to rebut the presumption by establishing that there is no reasonable possibility that the error contributed to the verdict.  If he or she met that burden, then the error would not justify or compel reversal.  If the prevailing party could not meet the burden, the presumption would be deemed unrebutted and reversal would be required.

¶42    Because there is no reasonable possibility that the error in denying Firemen's Fund's challenge for cause contributed to the verdict in this case, I would affirm.  In my judgment, it is senseless and manifestly unfair to overturn a jury verdict when an error made during jury selection could not have possibly affected the outcome of the trial.  I therefore dissent.

/S/ PATRICIA COTTER


Justice Jim Rice dissenting
.

¶43    I concur with Justice Cotter's dissent inasmuch as it addresses the proper standard to be applied to a district court's abuse of discretion in denying a challenge for cause in a civil jury case, and therefore dissent from the Court's reversal of the judgment entered herein.

¶44    In regard to a district court's abuse of discretion in denying a challenge for cause in a criminal jury case, I would apply the standard set forth in my dissent in State v. Good, 2002 MT 59, ___ Mont. ___, ___ P.3d ___.

/S/ JIM RICE