No. 97-237

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 340

STATE OF MONTANA,

Plaintiff and Respondent,

v.

DOUGLAS DeVORE,

Defendant and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

William F. Hooks (argued), Appellate Defender; Helena, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Mark W. Mattioli (argued),

Assistant Attorney General; Helena, Montana

Dennis Paxinos, Yellowstone County Attorney; Billings, Montana

Argued: May 12, 1998

Submitted: July 21, 1998

Decided: December 30, 1998

Filed:

No

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

**¶1. The defendant, Douglas DeVore, was charged by information in the District Court for the Thirteenth Judicial District in Yellowstone County with attempted deliberate homicide, assault, criminal endangerment, and resisting arrest. After a three-day jury trial, DeVore was convicted of all counts except the criminal endangerment charge. DeVore appeals his conviction. We vacate the judgment of the District Court and remand to the District Court for further proceedings.**

**¶2. The sole issue on appeal is whether DeVore's conviction should be reversed due to the District Court's denial of DeVore's motion to dismiss two jurors for cause.**

FACTUAL BACKGROUND

**¶3. On the evening of March 5, 1996, Douglas DeVore and Steve Scott were involved in a verbal altercation following a game of pool at the Empire Bar in Billings. During their dispute, DeVore drew a handgun and fired a shot into the ceiling of the bar. DeVore left the bar immediately after he fired the shot, and Scott and another man followed him.**

**¶4. The two continued to exchange words on the street, and DeVore eventually fired two more shots in Scott's direction. The shots narrowly missed Scott, who fled into the Northern Hotel. DeVore followed Scott into the hotel.**

**¶5. There was conflicting testimony about DeVore's conduct at the hotel. Four witnesses testified that DeVore pointed the gun at them and that they were afraid that he would shoot them. DeVore, on the other hand, claims that he did not specifically point the gun at anyone and that he did not intend to injure anyone. He admits that he yelled for Scott, but that when he could not find him in the hotel, he left. Police then arrived at the hotel and handcuffed DeVore; DeVore admitted that**

he resisted the arrest "slightly." The police testified that they had to wrestle him to the ground to handcuff him.

¶6. The State charged DeVore by information in the District Court for the Thirteenth Judicial District in Yellowstone County. It alleged that DeVore had committed attempted deliberate homicide and felony criminal endangerment, and that he had resisted arrest; in June 1996, the information was amended to include four felony counts of assault.

¶7. On the first day of the three-day trial, the parties participated in jury selection. During the State's examination, one juror was excused because he was acquainted with Scott and had heard Scott's version of the events. Two prospective jurors were also dismissed for cause during the defendant's examination, one because of his strong belief that it is inappropriate for citizens to carry handguns, and the other, Richard Klotz, because he was unsure of his ability to afford the defendant the presumption of innocence.

¶8. DeVore challenged two other prospective jurors, Kirk Brumfield and Jeffrey Schwehr, for cause based upon responses that they gave similar to Klotz's, which DeVore alleged raised concerns about their ability to presume he was innocent. The District Court told the jurors that they would have to presume DeVore innocent, and that if they were not convinced by the State beyond a reasonable doubt, they would have to find that DeVore was not guilty. When asked by the District Court if they could do that, both Brumfield and Schwehr stated that they thought they could. The District Court then denied DeVore's challenges. DeVore removed Brumfield and Schwehr with two of his six peremptory challenges; he exhausted his four remaining peremptory challenges on other prospective jurors.

¶9. During the trial, DeVore contended that he acted out of self-defense and that his state of mind did not reflect the necessary intent pursuant to the charged offenses. He testified that he was only attempting to scare Scott when he fired the shots on the street, and that he never intended to kill Scott or to cause injury to anyone at the hotel.

¶10. The jury acquitted DeVore of the criminal endangerment charge and convicted him of all the remaining charges.

## DISCUSSION

**¶11. Should DeVore's conviction be reversed due to the District Court's denial of DeVore's motion to dismiss two jurors for cause?**

**¶12. We will not reverse a district court's decision regarding a juror's fitness to serve absent an abuse of discretion.** *See State v. Sullivan* **(1994), 266 Mont. 313, 320, 880 P.2d 829, 834;** *State v. Williams* **(1993), 262 Mont. 530, 536, 866 P.2d 1099, 1102.**

**¶13. Our analysis of this case involves a two-step process. First, we must determine whether the District Court abused its discretion when it denied DeVore's motion to remove Brumfield and Schwehr for cause. Second, if we determine that the District Court abused its discretion, we must determine whether DeVore's conviction should be set aside as a result of the District Court's error.**

**¶14. Section 46-16-115, MCA, sets forth the reasons for which the District Court should excuse a juror for cause. It states in relevant part: "A challenge for cause may be taken for . . . (j) having a state of mind in reference to the case or to either of the parties that would prevent the juror from acting with entire impartiality and without prejudice to the substantial rights of either party." Section 46-16-115(2)(j), MCA.**

**¶15. At issue here is the state of mind of jurors Brumfield and Schwehr. DeVore's counsel posed the following questions to all of the prospective jurors:**

By the mere fact that defendant is charged with what they call an Information, which is a charging document filed with the courts, does anybody believe, therefore, that he is guilty of what he is charged with as he sits here before you right now? Does anybody believe that he has got to be guilty of something, otherwise he wouldn't be charged?

**¶16. Three jurors responded to the question:**

SCHWEHR: Well, I do have to be honest. He may have to be guilty of something, but may have been not felony, felony assault.

[DEF. COUNSEL]: So you, therefore, as you sit before us in your mind the defendant is guilty of something?

No

SCHWEHR: Something.

[DEF. COUNSEL]: Even though you haven't heard any evidence whatsoever --

SCHWEHR: That's right.

[DEF. COUNSEL]: -- coming from this stand? The mere fact that he is charged with something causes you alarm, cause you to think that he is guilty of something? Maybe not what he is charged with?

SCHWEHR: Fair or not.

[DEF. COUNSEL]: I'm sorry?

SCHWEHR: Fair or not.

[DEF. COUNSEL]: That's an honest answer.

KLOTZ: I would agree with him.

BRUMFIELD: So would I.

No

[DEF. COUNSEL]: You agree with that? You know, [State's counsel] talked with you folks about this presumption of innocence, and each one of you said to him, "Well, yeah, I presume him innocent."

But you, sir, and you, sir, and you, sir, have spoken up now, and you are letting me know that your true feeling is that he's guilty of something here or he wouldn't be charged; is that right?

KLOTZ: That's correct on my part.

[DEF. COUNSEL]: And then you are going to expect us, the defense, to come forward and prove to you that he is not guilty of what he is charged with, and maybe not guilty of anything. Is that the --

KLOTZ: I don't expect you to prove anything. I expect them to prove that he is in fact guilty of the charges that you have explained.

[DEF. COUNSEL]: Okay. But while sitting there waiting for this proof to come to you from the State, you have already made up your mind he is guilty of something?

KLOTZ: Well, of something. Maybe possibly guilty of shooting a gun at something.

[DEF. COUNSEL]: And you, sir, feel the same way?

BRUMFIELD: Me or --

No

[DEF. COUNSEL]: Both of y'all.

BRUMFIELD: I just feel he wouldn't be here. Guilty of something, maybe he was guilty of being at the wrong place at the wrong time; but I feel there is guilt of something or he would not be in front of us.

[DEF. COUNSEL]: Those are honest answers and that is -- anybody else?

KLOTZ: I don't feel that anybody runs around packing a gun, and so there has got to be something there.

[DEF. COUNSEL]: Okay. So in your mind, if someone carries -- by the mere fact that someone carries a firearm with them, then that gives you cause to believe that he's got --

KLOTZ: There is something there.

[DEF. COUNSEL]: Okay. Of a sinister --

KLOTZ: Yeah. In Texas you're licensed to carry them; you are not licensed in Montana to carry them.

[DEF. COUNSEL]: Judge, I am going to challenge these three people for cause.

**¶17. The District Court then instructed DeVore's counsel to inquire into whether the three jurors would be able to return a verdict of not guilty if the State could not prove the charges beyond a reasonable doubt, even if they thought that he was "guilty of something." In its statements to DeVore's counsel, the District Court referred to "what the law will require [the jurors] to do," and to the "independent oath as a juror" that they would be given by the District Court.**

**¶18. DeVore's counsel told the jurors that the presumption of innocence "is not something that you just pay lip service to, this is something that you are supposed to believe in." Klotz, however, agreed that he had difficulty with the concept, and maintained that the defendant was guilty "maybe of something -- one of the charges." DeVore's counsel asked whether the other jurors believed like Klotz:**

BRUMFIELD: Well, I have some faith in the State and the police department that they just don't bring charges against somebody just because they picked that man, or somebody seen that man there. I think they do a lot of investigative work ahead of time before they bring this to the courts or to us as jurors.

So that was why I stated that I feel that he is guilty of something, not necessarily of the charges brought up against him, and maybe he has other reasons for doing what he has done. But that's where I base that from, yes.

[DEF. COUNSEL]: That's exactly my point for a reason for doing what he has done. You haven't heard any evidence of anything that he's done.

BRUMFIELD: That's true.

[DEF. COUNSEL]: Other than the allegations.

BRUMFIELD: That's exactly right.

No

[DEF. COUNSEL]: But you are already starting out with the concept of this presumption of innocence, a nice three set of words. But it doesn't really hold for you, what this is supposed to mean; isn't that correct?

BRUMFIELD: Perhaps, perhaps; I'm not sure what that is to mean.

[DEF. COUNSEL]: Well, this man is supposed to be presumed innocent of everything and anything.

BRUMFIELD: Once he is in this court.

[DEF. COUNSEL]: As he sits before you right now.

BRUMFIELD: Okay.

[DEF. COUNSEL]: But you believe, because in your faith in the system, beginning with the investigation by the police, and then the charging by the State, that this man sits before you guilty of something. Either one of the charges or all of the charges or something associated with those charges?

BRUMFIELD: I guess I don't know how to answer that. Do I feel he's guilty of any of the charges? No. I really have no idea. I haven't heard anything.

[DEF. COUNSEL]: That's fair enough. And then underlying that, however, you believe

that he is guilty of something; however, whether it's the charges or something less than those charges or he wouldn't be here today?

BRUMFIELD: I feel he is involved, yes.

[DEF. COUNSEL]: Okay. Involved in a manner that is criminal and, therefore, he is guilty of something or simply just involved because he is a defendant?

BRUMFIELD: I don't know that I can answer that either. I guess I couldn't make my decision of guilty or not guilty until I heard everything.

[DEF. COUNSEL]: Okay. Let me ask you this: If you were sitting in that man's chair right there, standing accused of these man's crimes, would you feel comfortable with someone of your frame of mind sitting where you are?

BRUMFIELD: If I was guilty, absolutely not; if I was not, it would be a big maybe. Yes.

## ¶19. Schwehr's dialogue with DeVore's counsel advanced as follows:

[DEF. COUNSEL]: Okay. And then going back to you, you heard these honest answers from these individuals. Do you still stand by your original statement? Do you feel that he is charged, therefore, guilty of something?

SCHWEHR: No, that's not true. I assume he is guilty of something. I don't assume just because he is charged with felony assault or anything like that. Like the gentleman in the jury box, he said that most likely there had to be an investigation, otherwise he would not be here.

[DEF. COUNSEL]: Um-hum.

SCHWEHR: Whatever he is accused of here, I am still even not a hundred percent, even though you ran off the list of charges. But unless our prosecuting attorneys can prove beyond the shadow of a doubt that he is in fact guilty of what he is charged there, I'm going to insist that he be cleared of everything.

. . . .

[DEF. COUNSEL]: Okay. Now we discussed presumption of innocence here, and belief that this man wouldn't be here unless he is guilty of something. Right?

SCHWEHR: I still assume he is guilty of something.

[DEF. COUNSEL]: Okay. So you don't believe in this presumption of innocence for what it means?

SCHWEHR: I want to; and as the Judge said, if I could take my brain and erase everything off of it like a blackboard, I would do that. But unfortunately, I can't.

[DEF. COUNSEL]: And that's because of your personal biases and prejudices that you have come to this courtroom with?

SCHWEHR: (Nod of head.)

[DEF. COUNSEL]: We cannot get rid of those internal things that are within us. But the problem is we have to truly believe, before we can ask you to sit as a juror, in all fairness to the defendant, that you believe in that concept there. And what you are telling me is that you have -- you're having difficulty with your answer?

SCHWEHR: That's correct.

**¶20. DeVore renewed his challenge for cause against all three jurors. The District Court then stated:**

What you are confusing is these folks seem to have some faith in the system. There is nothing wrong with that. What is -- the question I haven't heard yet is whether you will accord the defendant his right to the presumption of innocence.

I don't care so much, or it's maybe not as important whether you believe that should be accorded him; will you, that is the question. Because you will be instructed and you will be expected to accord him the right, to accord him this presumption of innocence. You will be swearing to abide by that, and I need to know whether you can or not, whether you believe --

There may be other things that may come up that you don't think the law ought to be the way it is. Well, that's something you need to take up with your legislator, because what you will be swearing in this Court as jurors, if you are seated as a juror, will be to follow the law, and the law does require that you give this man the presumption of innocence.

That will be with him at every stage of these proceedings, that is with him now. And it will not be overcome until all 12 that are seated as a juror find as a group, unanimously, that beyond a reasonable doubt, the State has overcome that presumption.

Now, can you do that, [jurors]?

Brumfield and Schwehr each answered that they could do what the District Court had described; Klotz stated that he did not know. After the State's counsel also addressed the three of them, Brumfield and Schwehr stated that they felt that they could be fair and impartial jurors, while Klotz was still not sure. Further questions by both DeVore's counsel and the District Court revealed that Brumfield "can't honestly say I believe he is a hundred percent honest of everything when I am here in this courtroom for a reason, the State has brought charges against him for a reason, there is a reason." He nonetheless believed that based on his duty as a juror, and in spite of a personal belief that the defendant is guilty, he could find DeVore not guilty if the State did not convince him beyond a reasonable doubt. The District Court stated that it did not "have any problem" with Brumfield and Schwehr, but recognized that Klotz "has a little more doubt in his mind." Therefore, the District Court excused Klotz for cause but denied DeVore's challenge to Brumfield and Schwehr.

**¶21. We have previously held that disqualification based on a juror's alleged prejudice is necessary only where jurors "form fixed opinions on the guilt or innocence of the defendant which they would not be able to lay aside and render a verdict based solely on the evidence presented in court." *Great Falls Tribune v. District Court* (1980), 186 Mont. 433, 439-40, 608 P.2d 116, 120 (citing *Irvin v. Dowd* (1961), 366 U.S. 717, 722, 81 S. Ct. 1639, 1642, 6 L. Ed. 2d 751, 756); *see also Sullivan*, 266 Mont. at 320, 880 P.2d at 834. Similarly, "[a] court must excuse a prospective juror if actual bias is discovered during voir dire." *State v. Chastain* (1997), 285 Mont. 61, 64, 947 P.2d 57, 59 (quoting *United States v. Allsup* (9th Cir. 1977), 566 F.2d 68, 71).**

**¶22. Based on this language, the State contends that in order for this Court to conclude that the District Court should have dismissed the jurors for cause, Brumfield and Schwehr must have displayed bias in the form of a fixed opinion of DeVore's guilt of the alleged crimes, something which the State contends they did not do. Despite the well-established deference that we give to district court decisions regarding a juror's fitness, we reject the State's suggestion here that our review of a District Court's decision regarding a juror's partiality is limited only to whether the juror has stated a specific belief that the defendant is guilty as charged.**

**¶23. We noted in *Chastain* that "frequently, jurors are reluctant to admit actual bias, and . . . biased attitudes must be revealed by circumstantial evidence." *Chastain*, 285 Mont. at 64, 947 P.2d at 59. In the majority of our prior cases that have addressed**

juror partiality, jurors did not necessarily state a fixed opinion about the defendant's guilt, but nonetheless circumstantial evidence of bias was apparent in relation to the particular circumstances of the defendant's case. *See, e.g., Chastain*, 285 Mont. at 63-64, 947 P.2d at 59 (defendant charged with sexually assaulting his young female relatives, and juror expressed prejudice based on his sister's abduction at the age of sixteen); *Sullivan*, 266 Mont. at 321, 880 P.2d at 834 (juror reported prior knowledge of theft allegations against defendant, who was the local director of park and recreation department); *Williams*, 262 Mont. at 534-35, 866 P.2d at 1101-02 (juror knew the arresting officer, resided near where the alleged incident occurred, and had recently been a juror on similar charges); *Great Falls Tribune*, 186 Mont. at 439-40, 608 P.2d at 120 (involving a very high-profile crime with extensive media coverage).

¶24. Here, Brumfield and Schwehr did not express an unequivocal opinion that DeVore was guilty as charged. They did, however, demonstrate another form of bias based on their belief that people charged with crimes must be guilty of "something." Moreover, they acknowledged that it was difficult for them to understand and apply the presumption of innocence. Although they may not have stated in so many words that they believed DeVore was guilty of the charges against him, their adherence to the belief that "he is guilty of something" plainly demonstrated a serious question about their ability to act with impartiality and to afford DeVore the presumption of innocence to which he was entitled.

¶25. In *Williams*, we stated:

[W]hen voir dire examination discloses a serious question about a juror's ability to be fair and impartial, that question should be resolved in favor of excusing that juror. The role of the District Court is not to simply establish some record from which a future argument can be made that the juror recanted his or her admission of bias.

While there may be some temporary inconvenience to the court and to the parties from excusing a juror for cause, that inconvenience is minor compared to the expense and inconvenience that results from having to retry criminal cases.

*Williams*, 262 Mont. at 539-40, 866 P.2d at 1104-05. As the State points out, the facts of Williams are distinguishable from this case. Williams involved a potential juror who, during voir dire, expressed her concern about her ability to be impartial. She was a close friend of the arresting officer, was a resident of the neighborhood where the homicide at issue had occurred, had read of the crime and formed an opinion about it, and had just recently been on a jury in another homicide trial. The defendant challenged the juror for cause, at

*which point the district court reminded her that if she was chosen as a juror she would be instructed not to form an opinion. When the district court asked whether she could keep an open mind, she said that she could. The district court, on that basis, denied the defendant's motion to dismiss her. We held that both subsections (e), which addresses prior jury service in a trial that involved the same or a related offense, and (j), the provision relied on in this case, of § 46-16-115(2), MCA, constituted independent bases for her removal, and that the district court abused its discretion when it denied the defendant's motion to remove her. See Williams, 262 Mont. at 534-37, 866 P.2d at 1101-03. Although the facts are different, the issues in Williams and this case are the same.*

**¶26. The State contends that the District Court properly characterized the jurors' statements as merely indicative of their "faith in the system," and consequently separated that belief from the question of whether the jurors could afford the defendant his right to the presumption of innocence. This is a semantic distinction without a difference. However their responses are characterized, Brumfield and Schwehr maintained that DeVore was "guilty of something." They did not presume him entirely innocent and, therefore, were not impartial as the law requires that that term be defined.**

**¶27. We note a further problem with the manner in which the District Court's discretion was exercised in this case. In *Williams*, we expressly admonished trial judges regarding attempts to rehabilitate jurors. *See Williams*, 262 Mont. at 536, 866 P.2d at 1103 ("In the face of these admissions of bias, the District Court's rehabilitation of this witness was, at best, unpersuasive, and at worst, threatening."). Here, the District Court's effort to preserve Brumfield and Schwehr as jurors demonstrates two abuses. First, by deflecting the focus to law enforcement and characterizing the jurors' beliefs as a matter of the jurors' faith in that system, the District Court shifted the focus from the effect of those beliefs on the defendant's rights. Consequently, it ignored the obvious reality that jurors who steadfastly adhere to a belief that defendants are somehow guilty threaten a defendant's right to a fair and impartial jury.**

**¶28. Second, the District Court told the jurors that they "will be instructed and . . . expected to accord him the right," and that they would "be swearing in this Court as jurors . . . to follow the law," only to ask them immediately afterward, "can you do that?" The State contends that Brumfield's and Schwehr's responses to this question and others in which they stated that they could find DeVore not guilty if the State failed to prove its case beyond a reasonable doubt prove that the jurors were impartial. As we suggested in *Williams*, however, positive responses to this kind of effort at rehabilitation are not evidence of impartiality. "Few people would show the**

kind of contempt for a judicial officer that would have been necessary to persist in her admissions of bias under those circumstances." *Williams*, 262 Mont. at 536, 866 P.2d at 1103. Reliance by the State and District Court on those kinds of answers from jurors disregards this Court's instruction in *Williams*, which states that coaxed recantations of admissions of bias are merely fodder for appeal and ultimately the source of major expense and inconvenience. It is not a district court's role to rehabilitate jurors whose spontaneous, and thus most reliable and honest, responses on voir dire expose a serious question about their ability to be fair and impartial. Nor are we willing to disregard the dangers of such an approach under the auspices of judicial discretion.

¶29. Finally, we dismiss the State's assertion that the jurors' responses were not grounds to remove them for cause, based on the fact that they were the result of allegedly leading questions from DeVore's counsel, and that they occurred after the State emphasized to jurors that the voir dire process is about "truth-telling." The State seems to imply that the jurors were not at fault for their answers, and that the answers should be qualified, given the type of leading questions that were posed, and that the jurors should be commended for their willingness to give honest answers that reflect the views of many citizens.

¶30. "The purpose of voir dire in a criminal proceeding is to determine the existence of bias and prejudice on the part of prospective jurors and to enable counsel to intelligently exercise his peremptory challenges." *Great Falls Tribune*, 186 Mont. at 440, 608 P.2d at 120. In general, there is no rule that prohibits counsel from using leading questions to uncover prejudice in prospective jurors. *See State v. Gray* (N.C. 1997), 491 S.E.2d 538, 545. Here, the State did not object to the questions posed by DeVore's counsel, and our review discloses nothing inherently inappropriate about the questions asked.

¶31. Furthermore, while we acknowledge the State's contention that jurors Brumfield and Schwehr gave truthful answers throughout the examination by all the respective parties, and that their statements reflected honest beliefs about both DeVore's guilt and their ability to be impartial, that does not change the fact that the responses suggested a serious question about their ability to be entirely fair and impartial. We agree unequivocally with the State that neither Brumfield nor Schwehr is at fault in this case. The fact that they expressed a conceptual difficulty with the presumption of innocence, or that they tend to have faith in police

investigation to the point that it would affect their partiality, is not unique among citizens and they have every right to these views. Nonetheless, a defendant's right to a fair and impartial jury means that Brumfield and Schwehr, regardless of the propriety of their beliefs or their absolute right to maintain them, should have been dismissed by the District Court for cause. The State has provided no basis for its claim that jurors will somehow be discouraged from being fully honest in their responses during voir dire if we conclude here that the District Court abused its discretion when it refused to disqualify Brumfield and Schwehr for cause. Ultimately, despite a juror's best intentions and his professed willingness to follow a district court's orders, there is an abuse of discretion when a district court chooses to ignore a juror's expressed statements that he believes the defendant to be guilty of something in favor of its own attempt to rehabilitate the juror.

¶32. The second part of our inquiry in this case involves the effect of our conclusion that the District Court abused its discretion when it denied DeVore's motion to dismiss the two jurors.

¶33. Section 46-20-701, MCA, states that a defendant's conviction will only be overturned on appeal if the error was prejudicial. In *Williams*, we held that prejudice will be presumed if the following occurs: (1) a district court abuses its discretion by denying a challenge for cause to a prospective juror; (2) the defendant uses one of his peremptory challenges to remove the disputed juror; and (3) the defendant exhausts all of his peremptory challenges. *See Williams*, 262 Mont. at 538, 866 P.2d at 1103. We must, however, balance the presumption "against the totality of the circumstances in each case to determine whether the error contributed to the defendant's conviction." *Williams*, 262 Mont. at 538, 866 P.2d at 1103. Here, we preliminarily note that DeVore exhausted all of his peremptory challenges, two of them to remove Brumfield and Schwehr. We therefore presume, pursuant to *Williams*, that DeVore was prejudiced by the District Court's decision.

¶34. DeVore contends on appeal, however, that we should disregard that portion of *Williams* which requires us to consider the totality of the circumstances in order to confirm that the defendant has in fact suffered the presumed prejudice. He proposes instead that as a matter of law, a defendant who has been forced to use one or more of his peremptory challenges to remove a juror whom the district court should have removed for cause should have his conviction overturned without further evaluation of the State's case against him. He bases his position on the dual notion that the

rights provided to defendants by § 46-16-115, MCA, and Article II, Section 24, of the Montana Constitution, are not conditioned on the strength of the defendant's case, and that in a civil context, a party who has wrongly been denied an equal number of peremptory challenges does not have an obligation to show prejudice. The State, on the other hand, suggests that the *Williams* standard is appropriate, and that when applied here, the totality of the evidence against DeVore is so overwhelming that the District Court's decision not to remove the jurors did not have any effect on the jury's verdict.

¶35. As DeVore correctly points out, our presumption of harm due to a district court's erroneous refusal to remove jurors for cause is based on the disadvantage inherent when a defendant has fewer peremptory challenges than the State. *See Williams*, 262 Mont. at 537, 866 P.2d at 1103. However, we expressly rejected in *Williams* the rule that denial of the same number of peremptory challenges to the defendant as to the State constitutes prejudicial error as a matter of law and requires automatic reversal. *See Williams*, 262 Mont. at 537-38, 866 P.2d at 1103. Instead, we considered the totality of the circumstances in that case. *See Williams*, 262 Mont. at 538-39, 866 P.2d at 1104.

¶36. As DeVore also points out, the rule in a civil context is that when one party has been erroneously denied an equal number of peremptory challenges, we presume prejudice as a matter of law and automatically grant the offended party a new trial. *See King v. Special Resource Mgmt., Inc.* (1993), 256 Mont. 367, 374, 846 P.2d 1038, 1042, *overruling Leary v. Kelly Pipe Co.* (1976), 169 Mont. 511, 549 P.2d 813 (requiring a demonstration of prejudice to reverse a jury verdict after a district court error in the grant of peremptory challenges); *see also Bueling v. Swift*, 1998 MT 112, 958 P.2d 694, 55 St. Rep. 441. We recognize that our justice system demands that at least as much if not more protection be given to criminal defendants than to civil litigants and that, as such, the discrepancy between our rules in *Williams* and *King* requires some explanation.

¶37. The role of a jury in both civil and criminal cases is to resolve disputed issues of fact. *See* § 3-15-104, MCA ("A trial jury is a body of persons . . . sworn to try and determine, by verdict, a question of fact."); § 25-7-103, MCA ("All questions of fact . . . are to be decided by the jury . . . ."); § 26-1-202, MCA ("If a trial is by jury, all questions of fact . . . must be decided by the jury . . . ."); § 46-16-103(2), MCA ("Questions of law must be decided by the court and questions of fact by the

jury . . . ."). It follows that where there are no disputed issues of fact, the jury, and therefore the potential influence of its individual constituents, "biased" or not, is inconsequential to the final outcome of the case. On the other hand, where issues of fact do exist, the jury is the ultimate trier of the case and fairness requires that both parties have equal opportunity to shape the jury's composition by being provided an equal number of peremptory challenges. However, prejudice to a party from an erroneous denial of a challenge to a juror for cause can only occur if a question of fact exists.

¶38. Theoretically, in a civil context, cases which present no issue of fact should not reach a jury. For example, if a plaintiff files suit and supports his claim with evidence, and the defending party fails to present evidence that a genuine issue of fact exists (or to dispute the plaintiff's legal claim), the plaintiff may be entitled to summary judgment as a matter of law, in which case a jury is never called upon to determine the issue. Rule 50, M.R.Civ.P., motions for judgment as a matter of law similarly permit either party to seek a final judgment from the district court when no issue of fact is established.

¶39. Criminal cases are different. On the one hand, § 46-16-403, MCA, authorizes a district court, upon either its own initiative or a motion by the defendant, to dismiss the case against a defendant before the matter reaches a jury based on its determination that the factual evidence is insufficient to support a guilty verdict. However, our criminal justice system does not provide the State a comparable procedural method by which to prevail absent submission of the evidence to the jury. That is, no matter how uncontroverted the State's evidence, our system guarantees a defendant the right to have his guilt determined by a jury of his peers. *See* Art. II, Sec. 24 and 26, Mont. Const. The effect of this protection is that a jury may occasionally be called upon to decide a criminal case even in the absence of a genuine issue of fact. Such was the case in *Williams* where the State's evidence was "basically uncontradicted," due to the defendant's failure either to rebut the State's evidence or to present any testimony of his own. *Williams*, 262 Mont. at 539, 866 P.2d at 1104; *see also State v. Nichols* (1987), 225 Mont. 438, 448, 734 P.2d 170, 176 (holding that voir dire error was harmless because the defendant's trial testimony required any juror to convict on the charges).

¶40. We must therefore account for the possibility that the jury's verdict was strictly a product of the evidence and that the District Court's error might have played no

part whatsoever in what was an already uncontroverted matter according to the facts in the record. When error has not had a material impact on the result of a case, there is very little reason, beyond the unjustifiable punitive impact on the State and/or the district court, for the reversal of a defendant's conviction. This rationale underlies our well-established harmless error analysis, whereby a district court's error will be deemed harmless and a defendant's conviction will be upheld if the error did not contribute to the conviction. Accordingly, we reject DeVore's suggestion that we should no longer consider the totality of the circumstances in each case to determine whether the error contributed to the defendant's conviction, and that defendants who can show an abuse of discretion by the district court during voir dire should have their conviction overturned as a matter of law.

¶41. We reiterate here our rule from *Williams* that we must balance the presumption "against the totality of the circumstances . . . to determine whether the error contributed to the defendant's conviction." *Williams*, 262 Mont. at 538, 866 P.2d at 1103. In light of the presumption and our above analysis, a defendant on appeal need not show actual prejudice. Rather, he need only establish that the jury was charged with the determination of a factual issue important to the charges against him.

¶42. The record in this case reveals that, unlike Williams, DeVore gave testimony which created substantial and important issues of fact for the jury's determination. First, DeVore's primary defense involved his state of mind. The assault charges and the attempted deliberate homicide charge each required that the State prove that DeVore acted purposely and knowingly. DeVore conceded his conduct, but challenged the State's claim that he intended to injure the four alleged assault victims and to kill Scott. As such, DeVore's own testimony regarding his intent directly contradicted the evidence offered by the State to show that DeVore intended to injure and kill people that night. Second, there was conflicting testimony about whether DeVore actually pointed the gun at the four individuals in the hotel. Each issue depended heavily on the jury's assessment of DeVore's credibility, and the conflicting testimony clearly left to the jury the ultimate determination of whether DeVore acted in violation of the alleged statutes.

¶43. As we stated, DeVore need not show that a particular juror whom he would have removed if given the appropriate number of peremptory challenges led to his conviction. He must only demonstrate that in the totality of the circumstances important factual issues were determined by the jury, which confirms our

**presumption that he was prejudiced by the District Court's abuse of discretion during voir dire. The record demonstrates that the jury did decide important factual issues here. Accordingly, we vacate the judgment of the District Court and remand to the District Court for retrial of the charges of which the defendant was convicted.**

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ KARLA M. GRAY