JUSTICE TRIEWEILER
concurring and dissenting.
¶72 I concur with the majority’s conclusions that Danny Carl Good was not denied his right to speedy trial and that he is entitled to a new trial based on the District Court’s erroneous refusal to grant challenges to jurors for cause.
¶73 I dissent from the majority’s conclusion that the District Court’s abuse of discretion during the jury selection process is “structural” error which will always require reversal without regard to the narrow exception we established in State v. DeVore, 1998 MT 340, 292 Mont. 325, 972 P.2d 816.1 believe this case is a clear example that the bright line dichotomy between “structural” and “trial” errors for purposes of analyzing whether error was harmless will ultimately lead to arbitrary *131 results which bear no relationship to the actual impact of an error on the outcome of a case and will undermine public confidence in the criminal justice system. In retrospect, I conclude that this Court erred when it adopted the “structuraT’Arial” dichotomy for analyzing error which was first formulated by the U.S. Supreme Court in Arizona v. Fulminante (1991), 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302, and which has proven problematic in its application by federal courts, including the U.S. Supreme Court.
¶74 It seems ironic to me that by expanding structural error to include abuses of discretion by the District Court during the jury selection process, we have expanded the circumstances under which trial court error will lead to automatic reversal when, in fact, the U.S. Supreme Court’s intention in Fulminante was to actually narrow the circumstances which will lead to automatic reversal.
¶75 In Fulminante, the issue was whether the defendant’s confession had been coerced and, if so, whether the harmless error rule could be applied to save a conviction even though the coerced confession had been admitted during the defendant’s trial. The court held that the confession had been coerced and a majority of the court held that its admission had been prejudicial to the defendant. However, a five-person majority of the Supreme Court in an opinion authored by the chief justice held that admission of a coerced confession need not always lead to automatic reversal. In doing so, the Court reversed its previous line of authority including Chapman v. California (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, which included coerced confessions among those types of error which could never be characterized as harmless. The majority rationalized their decision by distinguishing those types of error which occur during trial and can be “quantitatively assessed in the context of other evidence,” Fulminante, 499 U.S. at 308, 111 S.Ct. 1246, and error which it considered “structural” such as the deprivation of right to counsel, which are “defects in the constitution of the trial mechanism, and defy analysis by “harmless error” standards.”Fulminante, 499 U.S. at 309, 111 S.Ct. 1246. However, the arbitrariness and difficulty with application of the majority’s dichotomy was immediately apparent to a four-person minority. In a dissent to that part of the opinion written by Justice White, after noting the majority’s attempt to distinguish “trial errors” from “structural defects,” the dissenting members of the court noted:
This effort fails, for our jurisprudence on harmless error has not classified so neatly the errors at issue. For example, we have held susceptible to harmless-error analysis the failure to instruct the *132 jury on the presumption of innocence, Kentucky v. Whorton, 441 U.S. 786, 99 S.Ct. 2088, 60 L.Ed.2d 640 (1979), while finding it impossible to analyze in terms of harmless error the failure to instruct a jury on the reasonable doubt standard, Jackson v. Virginia, 443 U.S. 307, 320, n. 14, 99 S.Ct. 2781, 2790 n. 14, 61 L.Ed.2d 560 (1979). These cases cannot be reconciled by labeling the former “trial error” and the latter not, for both concern the exact same stage in the trial proceedings. Rather, these cases can be reconciled only by considering the nature of the right at issue and the effect of an error upon the trial.
Fulminante, 499 U.S. at 291, 111 S.Ct. 1246.
¶76 The minority noted the most immediate problem with the majority’s analysis when it pointed out that “a defendant’s confession is ‘probably the most probative and damaging evidence that can be admitted against him,’ ” Fulminante, 499 U.S. at 292, 111 S.Ct. 1246 (citations omitted). The inconsistency of concluding that the admission of coerced confessions can be harmless because occurring during the trial phase of the proceedings whereas denial of a peremptory challenge is arguably “structural” was also pointed out by dissenting Judge Leavy in United States v. Annigoni (9th Cir. 1996), 96 F.3d 1132, when he wrote as follows:
[I]n the last ten years the Supreme Court has established that even errors which violate important constitutional rights are subject to harmless error analysis.
We have gone from that holding [referring to Rice v. Wood, 77 F.3d 1138 (9th Cir. 1996)] to the majority’s holding that the denial of a defendant’s statutory right to exercise a peremptory challenge, which he has an unfettered right to exercise even for reasons of superstition, now calls for automatic reversal. John Quincy Adams said it best: “I told him that I thought it was law logic-an artificial system of reasoning, exclusively used in courts of justice, but good for nothing anywhere else.” [Quoting John Quincy Adams, Memoirs of John Quincy Adams 4:372 (Charles Francis Adams ed. 1875)].
Annigoni, 96 F.3d at 1149-50.
¶77 Nor has the Fulminante dichotomy for analyzing error escaped criticism from those who have studied its consequences. In State v. LaMere, 2000 MT 45, 298 Mont. 358, 2 P.3d 204, we quote several times from David McCord, The “Trial”/’’Structural”Error Dichotomy: Erroneous, and Not Harmless, 45 U.Kan.L.Rev. 1401, 1412 (1997), for *133 an explanation of what the Supreme Court intended by the Fulminante decision. However, it is also helpful to consider the same author’s observations of the consequences of the Fulminante decision. McCord states by way of introduction that:
[T]his erroneous rule of law is not harmless because it adds an unneeded layer of complexity to harmless error law and distracts courts from the true task at hand: determining whether constitutional errors are serious enough to mandate reversal.
McCord, The Trial Structural Error Dichotomy, 45 U.Kan.L.Rev. at 1403.
¶78 McCord foresaw the problem of the Supreme Court’s faulty analysis which we are experiencing by this decision when he stated:
The first problem is that if the court really intended the evidentiary definition to govern, the realm of automatic reversible structural error would expand dramatically because there are a large variety of nonevidentiary constitutional errors. While ideologies can debate whether such an expansion would be a good result as a matter of policy, it is clear that the court-which adheres to the position that structural error is the exception-did not intend that result.
McCord, The Trial Structural Error Dichotomy, 45 U.Kan.L.Rev. at 1413.
¶79 McCord also notes the difficulty with consistent application of the Supreme Court’s dichotomy. For example, if we use the “durational” definition for trial error which is discussed in paragraph 47 of our LaMere opinion, when does it begin and end? McCord noted:
[T]he Court left several key ambiguities dangling. First, what is the beginning point of the duration-the start of voir dire, the moment the jury is sworn in, or the beginning of the prosecution’s opening statement? Second, what is the end point of the duration-the end of the jury instructions or the return of the verdict...? Third, whatever the starting and ending points, is every moment in between included, or only the times when court is in session?
McCord, The Trial Structural Error Dichotomy, 45 U.Kan.L.Rev. at 1414.
¶80 In conclusion, McCord noted that:
The Fulminante dichotomy is a badly 'conceived and badly explained doctrine. Thus, it is not surprising that Fulminante has proven to be unsatisfactory precedent, both for the Supreme Court itself and for the lower courts. It is to the first era of this *134 unhelpful legacy of case law spawned by Fulminante that I will now turn my attention.
McCord, The Trial Structural Error Dichotomy, 45 U.Kan.L.Rev. at 1416.
¶81 The post-Fulminante Supreme Court decisions to which McCord referred include Brecht v. Abrahamson (1993), 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353, and Sullivan v. Louisiana (1993), 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182, in which the Supreme Court has arguably already begun to back away from the arbitrary, sometimes illogical and often unworkable “trial7“structural” dichotomy for analyzing whether error is harmless or requires automatic reversal.
¶82 McCord concludes his analysis with the following observation:
The court in Fulminante substituted a new dichotomy (or maybe not, depending on which of the conflicting definitions of “trial error” one focuses on) seemingly to reach the result the majority wanted as to a particular constitutional issue-coerced confessions-that it felt was on the wrong side of the Chapman dichotomy. Since then, in Brecht and Sullivan, the Court has been trying to distance itself from the dichotomy without repudiating it, but also without substituting any better mode of analysis. This has resulted in two lamentable consequences: (1) the lower courts are plainly and understandably confused concerning what mode of analysis to apply; and (2) the real issues concerning whether errors should be reversible are often obscured by the unneeded overlay of the dichotomy.
McCord, The Trial Structural Error Dichotomy, 45 U.Kan.L.Rev. at 1460.
¶83 I agree.
¶84 We first followed the “trial”/“structural” dichotomy for analyzing district court error in State v. LaMere, 2000 MT 45, 298 Mont. 358, 2 P.3d 204. In that case the question was whether summoning prospective jurors by telephone (a process which we concluded violated the method prescribed in § 3-15-505, MCA (1997)) was automatically reversible or could be harmless if “actual prejudice” was not demonstrated. We overruled our prior decision in State v. Robbins, 1998 MT 297, 292 Mont. 23, 971 P.2d 359, and held that failure to substantially comply with Montana’s statutes governing the procurement of a jury required per se reversal. We reasoned that:
The underlying “purpose of the jury selection statutes is to provide random selection of jurors from the entire panel or array,...thus securing a fair and impartial jury.” [citations *135 omitted.]
In short, the objective procedures established by the Montana legislature for the random selection of jurors are intended to protect a criminal defendant’s fundamental right to a fair and impartial jury, as guaranteed by Article II, Sections 24 and 26 of the Montana Constitution and by the Sixth and Fourteenth Amendments the United States Constitution. We construe this substantial compliance standard as being designed to protect a defendant’s fundamental right to an impartial jury, primarily, by encouraging reasonably strict compliance with statutory procedures intended to implement, and thereby secure the fair cross section guarantee of the Sixth Amendment.
LaMere, ¶¶ 34-35.
¶85 Because the defective process by which the jury was summoned in LaMere did affect the defendant’s right to a fair cross section, I agreed in LaMere that the basic structure by which his trial occurred was compromised and that automatic reversal was necessary. I still agree with the result. However, denial of a peremptory challenge (which is what in effect occurs when the district court abuses its discretion by denying challenges for cause) does not affect the constitutional right to a fair cross section and, while I presume it to be prejudicial, does not rise to the same constitutional magnitude as the selection process at issue in LaMere. In fact, denial of peremptory challenges basically concern a party’s right to determine who the párticular jurors are who will sit on a jury. In LaMere we noted that “Montana case law has consistently held that a party has no right to have a particular member of the panel sit on a case.” LaMere, ¶ 37 (citing Tribby v. Northwestern Bank of Great Falls (1985), 217 Mont. 196, 704 P.2d 409, 416).
¶86 What I now believe was unnecessary in LaMere was our additional discussion by which we subscribed to the Supreme Court’s analysis of error as either “trial” error or “structural” error and then felt the need to adopt that analysis in order to justify automatic reversal of LaMere’s conviction for the District Court’s failure to summon a fair cross section.
¶87 We next considered “structural” error versus “trial” error in State v. VanKirk, 2001 MT 184, 306 Mont. 215, 32 P.3d 735. In VanKirk, we reconsidered prior reasoning in Brodniak v. State (1989), 239 Mont. 110, 115, 779 P.2d 71, 74, that error could be found harmless when balanced against “the overwhelming evidence and the totality of the circumstances.” VanKirk, ¶ 32. In an effort to arrive at a reasonable *136 process for reviewing trial court error without simply weighing the effect of the prejudicial evidence against admissible evidence on a case-by-case basis, we adopted a two-step process by which we first assumed that “structural” error as defined by the U.S. Supreme Court in Fulminante is automatically reversible and then arrived at a new method for determining whether “trial” error was actually prejudicial. Again, I have no problem with the ultimate conclusion that some district court error is of such magnitude and involves such important constitutional rights that reversal is required. However, now having had an opportunity to observe the misapplication of such a wooden and arbitrary dichotomy, I would no longer follow it.
¶88 The majority reasons that because in VanKirk we rejected the “overwhelming evidence rule,” we must also now reject our prior decisions in State v. Williams and State v. DeVore (which presume prejudice for errors during jury selection) and substitute the VanKirk “two step analysis to determine whether an error prejudiced a criminal defendant’s right to a fair trial and is, therefore, reversible.” Having done so, the majority concludes that improper denial of challenges for cause during voir dire is structural because it precedes the presentation of evidence and affects the framework in which the trial proceeds. First, I disagree that VanKirk has any application to this case. The purpose of the VanKirk analysis is to determine whether trial court error is prejudicial. That analysis is unnecessary in a circumstance where error is presumed. We have long presumed that granting one party more peremptory challenges than the other (the practical effect of denying meritorious challenges for cause) is prejudicial. See, e.g., King v. Special Resource Mgmt., Inc. (1993), 256 Mont. 367, 846 P.2d 1038; State v. Williams (1993), 262 Mont. 530, 866 P.2d 1099; and State v. DeVore, 1998 MT 340, 292 Mont. 325, 972 P.2d 816. Trying to superimpose a process by which we determine whether error was prejudicial on a situation where prejudice is presumed leaves us with the strange result that a coerced confession can now be reviewed to determine whether it was harmless but the tactical advantage resulting from an extra-peremptory challenge is automatically reversible. By classifying the District Court’s abuse of discretion under these circumstances as “structural,” we have arrived at the correct result in this case but have fit a square peg into a round hole which will surely lead to absurd results in the future.
¶89 Furthermore, the majority’s conclusion that we weigh mistakes during the jury selection process against the “overwhelming evidence” in criminal cases is not correct. We did so in Williams. However, that *137 rule was changed substantially in DeVore to reflect the reality of criminal litigation. As noted by Justice White in his portion of the Fulminante opinion:
For example, a judge in a criminal trial “is prohibited from entering a judgment of conviction or directing the jury to come forward with such a verdict, [citations omitted] regardless of how overwhelming the evidence may point in that direction.”
Fulminante, 499 U.S. at 294, 111 S.Ct. 1246.
¶90 We recognized that reality in our DeVore decision and, therefore, distinguished the effect of an error in jury selection in civil cases as opposed to criminal cases when we pointed out that:
The role of a jury in both civil and criminal cases is to resolve disputed issues of fact. It follows that where there are no disputed issues of fact, the jury, and therefore the potential influence of its individual constituents, “biased” or not, is inconsequential to the final outcome of the case. On the other hand, where issues of fact do exist, the jury is the ultimate trier of the case and fairness requires that both parties have equal opportunity to shape the jury’s composition by being provided an equal number of peremptory challenges. However, prejudice to a party from an erroneous denial or a challenge to a jury for cause can only occur if a question of fact exists.
Theoretically, in a civil context, cases which present no issue of fact should not reach a jury.
Criminal cases are different. On the one hand, Section 46-16-403, MCA, authorizes a district court, upon either its own initiative or a motion by the defendant, to dismiss the case against a defendant before the matter reaches a jury based on its determination that the factual evidence is insufficient to support a guilty verdict. However, our criminal justice system does not provide the state a comparable procedural method by which to prevail absent submission of the evidence to the jury. That is, no matter how uncontroverted the state’s evidence, our system guarantees a defendant the right to have his guilt determined by a jury of his peers. See Article II, Sec. 24 and 26, Montana Constitution. The effect of this protection is that a jury may occasionally be called upon to decide a criminal case even in the absence of a genuine issue of fact. [Citations omitted.]
DeVore, ¶¶ 37-39.
¶91 We then modified our holding in Williams that errors during the jury selection process must be balanced against the totality of the *138 circumstances and held that:
In light of the presumption and our above analysis, a defendant on appeal need not show actual prejudice. Rather, he need only establish that the jury was charged with the determination of a factual issue important to the charges against him.
DeVore, ¶ 41.
¶92 The modification of Williams by DeVore is the second reason why the VanKirk analysis is not applicable to this case. We no longer weigh errors in the jury selection process against the overwhelming evidence to determine whether the error was prejudicial. Prejudice is presumed. The only exception occurs when there are no issues of fact for the jury to decide. I believe that retaining this exception is critical to maintaining public confidence in the criminal justice system.
¶93 The majority opinion straps future courts into an appellate straight jacket. Where district courts abuse their discretion in the jury selection process, this Court will have no basis for affirming a conviction regardless of how heinous the crime and regardless of whether there were factual issues for the jury to decide.
¶94 In order to avoid absurd results which endanger the public and bring public ridicule upon this Court, future members will instead find ways to conclude that there was no abuse of discretion when a challenge for cause is denied. That’s only human nature. In the process, the rules for obtaining an impartial jury will be eroded, defendants will gradually be denied an equal number of peremptory challenges, and the majority will have achieved the exact opposite of its intended result.
¶95 Because I strongly believe in the importance of challenges for cause and peremptory challenges, because I believe there is an undisputed tactical advantage for one side which is able to exercise more peremptory challenges than the other, and that the ultimate effect of the majority’s opinion will be to erode the consistency by which we enforce a defendant’s right to challenges for cause, I dissent from that part of the majority opinion which adopts the “trial”/“structural” dichotomy to the jury selection process and requires automatic reversal of every criminal conviction in which a district court has abused its discretion during the jury selection process.